## TRAIMAN v. RAPPAPORT.
### No. 4209.

Circuit Court of Appeals, Third Circuit.
May 8, 1930.

Robert T. McCracken, of Philadelphia, Pa., for appellant.

Ben-Zion Oliensis, of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge.

In Ocean City, New Jersey, a land boom was on. An auction sale of lots was advertised to be conducted by a real estate company of which the defendant was president and active broker. Prior to the sale the plaintiff, according to his story, called upon the defendant for information as to the desirability of the properties and protection in case he should buy, but really, the defendant said, to obtain a division of the commissions on any sale of properties to his friend Yellin. However that may be, both parties, long familiar with the business of selling and buying real estate, knew what they were doing. Each knew the motives that actuated the other. The defendant, with an eye only to commis-

sions, was keen to sell the lots at high prices —prices so high that they had little relation to land values—and the plaintiff was willing to buy lots at such prices in the hope that, before settling day, someone would repurchase them at even higher prices. Before buying, however, the plaintiff wanted something more; he wanted to be assured of the future market. So he said, and the jury found, that the defendant promised him that if he would purchase properties at the sale and should not be able to resell them before the date fixed for settlement he (the defendant) would return to him the deposit money and take over the agreements of sale himself. Feeling then that he might win and could not lose, the plaintiff attended the sale and on a purchase of five properties for a total price of $95,800 paid deposit money in the sum of $9,580. He at once signed confirmations with the defendant broker and, later, entered into formal agreements of sale with the owners of the properties which contained clauses usual in such documents including one that a first payment of ten per cent. (named in dollars) of the purchase money on each lot had been paid by the purchaser (plaintiff), and that this payment be applied on account of the purchase price or, on default in paying the balance, be forfeited as liquidated damages. The boom broke. The plaintiff, not being able to resell the properties and therefore not being satisfied with his purchases, defaulted and called upon the defendant to refund the deposits. When the defendant refused, he brought this suit to recover them. On the court's instruction that the only law in the case was that when a man makes a lawful promise he is bound to stand by it and that the promise here, if made, was lawful and enforcible as not being violative of the Statute of Frauds, though dealing incidentally with real estate, and on its submission that the sole question of fact for the jury to determine was whether or not the contract was made, the plaintiff had a verdict. The defendant appealed, assigning error in several respects but particularly in the respect that the contract is void under the Statute of Frauds and therefore it was error to submit it to the jury.

We must first determine, what is the contract? Though oral, there is no difficulty in finding its terms. The difficulty is in determining its character. Its terms are given in the words of the plaintiff, both in his statement of claim and when on the witness stand, and, since the verdict, are not open to dispute. In his statement of claim he said:

That prior to the date of the sale, the defendant auctioneer, "in order to interest, solicit and induce plaintiff to become a bidder and purchaser of real estate at said public auction sale, did enter into an oral agreement and arrangement with said plaintiff wherein and whereby it was agreed that in the event that the said plaintiff would purchase at the auction sale which was to be conducted by said defendant on September 5th, 1925, as aforesaid, any land, parcels or pieces of ground, or any other real estate, and thereafter at any time prior to November 5th, 1925 (the date upon which final settlement was to be made for any real estate so purchased), should be dissatisfied with any part, or all, of said real estate so purchased, for any reason whatsoever, then said plaintiff was to have the right or privilege of: (a) demanding the return and receiving from said defendant, any moneys paid toward the purchase price of said real estate; (b) being relieved by said defendant from any agreement or agreements which said plaintiff may have entered into in connection with the purchase of said real estate; (c) the said defendant was to return to said plaintiff, upon demand by said plaintiff, at any time prior to November 5th, 1925, any moneys which said plaintiff may have paid on account of any of said real estate; (d) and said defendant was to take over from said plaintiff any agreements entered into by said plaintiff in connection with the purchase of said real estate."

That is the contract as declared on. When on the stand the plaintiff, in answer to the question, "What was that arrangement," proved the contract, as pleaded, in this one sentence: "He (the defendant) told Mr. Yellin and myself that, if those properties were not sold before November 5, which was the date of settlement, that he personally would refund every penny we put in as a deposit on them and take them over himself." This testimony supports the averments a, b, c and d in the paragraph quoted from the statement of claim.

■ What is the subject matter of the contract? We are constrained to hold that it is an equitable interest in real property. 25 R. C. L. 580. Clearly the contract contemplated the purchase of land, indeed two purchases, one by the plaintiff from the owners and one by the defendant from the plaintiff. Actual purchases were made and first instalments of the purchase price were paid by the plaintiff. There was thus created in him the equitable estates contemplated by the parties to the oral contract. It was these purchases—these equi-

338

table interests—that the defendant orally promised to "take over."

What is the legal character of the contract? The contract covered the four quoted undertakings by the defendant in connection with the sale and purchase of land, all for the consideration that the plaintiff would buy at the sale.

The plaintiff, construing the contract, says there was no agreement between him and the defendant with respect to the purchase of land, that his (the plaintiff's) undertaking was to "bid" and the defendant's single undertaking was to "take over (his) bid" and pay back the deposit, and that this was in legal effect a contract of indemnity, not a contract in respect to the purchase of land void under the applicable Statute of Frauds.

Looked at from the standpoint of either party there is more in the contract than indemnity. The plaintiff wanted, on becoming dissatisfied, not only to have his money returned but to get from under the contracts of purchase which he knew he would have to make, and did make, with the owners of the land. He knew that unless relieved of these contracts he would be liable under them for the balance of the purchase price ($86,220) even if the defendant returned the first instalment ($9,580). And so he contracted for that very thing. The only legal way in which he could accomplish it was to sell or turn over to the plaintiff the equitable estates he had purchased from the owners and the only way he could do that was for him to assign and the defendant to take over his contracts of purchase, which is precisely what, on his inducement, the defendant promised to do. This situation is in principle close to an oral agreement between a grantor and grantee for a reconveyance of land which has been held to be a contract for its sale and to fall within the statute, 25 R. C. L. 545, 546, and is far from the situation arising under an oral agreement on the part of a grantor to refund or increase the purchase price in proportion as the land falls short or exceeds the estimated quantity, in respect to which courts have differed in holding the transaction within or outside the statute. 25 R. C. L. 556.

■ Looking at the contract in its entirety we think it plainly means that in consideration for the plaintiff's purchase of land the defendant promised, if later the plaintiff should become dissatisfied, to take his place and become the purchaser himself. On this construction the unwritten contract is not enforcible under the Statute of Frauds unless,

as the plaintiff contends, the controlling feature of the contract sued upon is not affected by the statute and lies outside its scope.

■ How is the contract affected by the Statute of Frauds? The statute applies to equitable as well as to legal estates. Partridge v. Cummings, 99 N. J. Eq. 14, 131 A. 683. The plaintiff maintains, however, that the contract, properly construed, has two aspects; one of indemnity based on the promise to refund the deposit, the other (possibly) the purchase of land based on the promise to "take over," and that even if the latter, because not in writing, comes within the Statute of Frauds and is therefore not enforcible, the former constituting a distinct and severable element is not within the statute and is enforcible. 27 C. J. 318; 25 R. C. L. 555. Though the plaintiff declared on the contract as a whole (see quotation from the statement of claim) and sought to recover upon an alleged breach of all its "terms and conditions," he now seeks to sustain his recovery on the breach of only one of its terms and thus has brought to light a serious question of variance between the allegations and proofs. 27 C. J. 319. As that question was not raised at the trial we shall lay it aside.

■ The Statute of Frauds affects the contract in suit according as it may be an entire or a separable contract under familiar law that if a part of an oral contract, falling within the scope of the statute, is in violation of the statute, the whole contract, if it is entire and indivisible, is within the statute and unenforcible; but if the contract is divisible, that part of it which is not within the scope of the statute may be enforced. 27 C. J. 318. Whether a contract is entire or divisible depends very largely on its terms and on the intention of the parties disclosed by its terms. As a general rule a contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment. 13 C. J. 561. Aside from the terms of the contract and intention of the parties a test of severability is that if the consideration is single the contract is entire but if the consideration is expressly or by implication apportioned, the contract may be, yet even then need not necessarily be, regarded as severable. 13 C. J. 561, 562, 563.

■ The plaintiff gave the defendant but one consideration for his four promises and that

was his promise (later performed) to buy properties at the sale. 27 C. J. 349, 350, 351; Franklin v. Matoa Gold Mining Co. (C. C. A.) 158 F. 941, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302. If the defendant's promises be separate and distinct it is impossible to apportion the plaintiff's single consideration to any one of them. On our construction of the contract, his consideration ran to the whole of the defendant's undertakings which were, in one way and another, to take the properties off his hands. If, because the defendant's promises as pleaded were separately stated and alphabetically noted, it would seem that they are distinct and several, their severability disappears in view of the fact that had the defendant paid back to the plaintiff his deposits on the sales under one promise he would indubitably have been entitled, under another, to an assignment or conveyance of the equitable interest in the properties which the plaintiff acquired under his contracts with the owners, and in view of the further fact that until such assignment or conveyance the plaintiff would still be liable to the owners for the balance of the purchase price. Therefore the defendant's promise to refund the first instalment of the purchase price is inevitably linked up with the interest in the properties which the plaintiff had purchased. We think the defendant's undertakings to pay back and take over are inseparable and as the undertaking to take over (not being in writing) is within the Statute of Frauds the whole contract is unenforcible.

The judgment of the District Court is reversed and the case remanded for a new trial in accordance with the law of this opinion.