[No. 25659-9-I.   Division One.   July 1, 1991.]

*In the Matter of the Marriage of* KAREN S. MULL, *Appellant, and* RICHARD L. MULL, *Respondent.*

*William W.K. McInerney, Jr.,* and *John A. Follis,* for appellant.

*William L. Kinzel,* for respondent.

COLEMAN, J.—Karen Mull appeals the trial court's order allowing Richard Mull to deduct from his gross income the capital contributions to his partnership and payments into a pension plan for purposes of calculating child support. Karen also challenges the validity of the escalation clause in the parties' modified dissolution decree because it is linked to percentage increases in the Consumer Price Index and in Richard's income. We affirm.

Karen and Richard Mull obtained a decree of dissolution on April 11, 1986. The parties were awarded joint legal custody of their two minor children, and Karen was awarded physical custody. As the noncustodial parent, Richard's support obligation was $1,050 per month ($700 for child support and $350 for private school and day-care expenses). The decree further provided that future child support payments would be adjusted annually "by an amount equal to the average percentage increase of the annual cost of living for the prior three (3) years as reflected in the Consumer [Price] Index . . ." with a maximum monthly increase set at $75. When the dissolution decree was entered, Richard was an associate at the law firm of Perkins Coie earning between $60,000 to $77,000 per year.

After Richard became a partner of Perkins Coie, his base salary increased to approximately $135,000 per year. In September 1988, Karen retained an attorney who contacted Richard to discuss a "shortage" in that month's support payment. In the following December, Richard made an irrevocable election to enter into a pension plan offered by the law firm which supplemented his mandatory 401(k) retirement plan.[1] Once Richard chose to participate in the pension plan, payments made into it became mandatory

---

[1] It is undisputed that the 401(k) retirement plan is mandatory.

and amounted to 5.6 percent of his gross monthly earnings ($702.50) per month.[2]

In March 1989, Karen filed a petition for modification of the dissolution decree, alleging that she had experienced a serious economic hardship under its terms and that a substantial change of circumstances had occurred. At that time, Richard was paying $1,081 in monthly child support. The trial court entered an order on February 2, 1990, modifying the decree to increase Richard's monthly support payments to $1,900 from December 1, 1989, through December 1, 1990, at which time the parties could make an annual support adjustment as provided in the decree. In its findings of fact, the court determined that the original level of child support created a severe economic hardship for Karen and the children and that a material and substantial change in circumstances had resulted from the significant increase in Richard's annual salary. In addition, the trial court made the following factual findings:

> [Karen's] gross monthly income is $2,800.00 and her net monthly income is $2,477.00. [Richard] receives gross monthly income (after deduction of all pension contributions to a 401(k) plan and a retirement plan, FICA and insurance) from the Perkins Coie Master Professional Service Corporation of $11,250.00. [Richard's] net monthly income (after deduction of all capital contributions to Perkins Coie and related building partnership of $1,687.00, FICA of $300.00, income tax of $2,346.00, and disability insurance of $40.00) is $6,877.00. [Richard] should be given the benefit of the above deductions for pension contributions [and] capital contributions . . . some of which had been voluntary, but had been assumed as a mandatory deduction by [Richard's] action.

The order also revised the original escalation clause to read as follows:

> the amount of support shall be adjusted each year and that support shall be increased by the lesser of any percentage

---

[2]Although Karen's attorney asserted at oral argument that Richard could elect out of the pension plan, that assertion is not supported by the record. The terms of the plan clearly make an election to participate in it irrevocable. As noted in the declaration of Guy Bennett (Perkins Coie's executive director), "[o]nce the partners are in the plan, the partners must stay in at the maximum amount."

increase in the Consumer Price Index for Urban Workers in the Seattle–Everett Area or the percentage increase in [Richard's] gross income from the prior calendar year, whichever is less. In no event shall the total amount of support exceed $2,500.00 per month total, prior to any reevaluation at the time that the oldest child reaches age 12. Said support for the oldest child shall continue until said child finishes high school, but in no event continue past age nineteen (19). At that time, the child support shall be reduced to 58% of the support that was then being paid by [Richard]. The support for the second child shall continue until said child finishes high school, but in no event to continue past age nineteen (19).

On appeal, Karen challenges the court's decision to allow Richard to deduct from his gross income the payments to the pension plan and the capital contributions to Perkins Coie. Karen also asserts that the escalation clause is voidable.

■ As a preliminary matter, we note that Karen's motion to supplement the appellate record with Judge Pro Tempore Praeger's written "observations" is denied because Judge Praeger's formal findings of fact are not ambiguous or vague and do not require us to consult his observations for clarification. *See Port Townsend Pub'g Co. v. Brown,* 18 Wn. App. 80, 85, 567 P.2d 664 (1977); *Hawaiian Ins. & Guar. Co. v. Federated Am. Ins. Co.,* 13 Wn. App. 7, 11, 534 P.2d 48 (1975). Moreover, according to the undisputed affidavit of attorney William L. Kinzel, Judge Praeger expressly denied Karen's earlier request to include his written observations as part of the trial record. We see no basis for finding that Judge Praeger abused his discretion in making that ruling.

Regarding the substantive issues, we first address whether Standard 4 of the Child Support Schedule authorizes a deduction from Richard's gross income of the payments he makes into the pension plan in question.[3] Karen

---

[3]The pertinent part of Standard 4 of the Child Support Schedule states as follows: "Allowable deductions from gross income are income taxes, FICA, *mandatory pension plan payments,* and mandatory union/professional dues. Payment of child support or maintenance involving other relationships shall be disclosed

asserts that the pension plan is not "mandatory" as contemplated by Standard 4 because Richard could elect to participate in the plan and because it was only after he made that election that the plan became mandatory. Also, according to Karen, Richard knew or should have known that the March 1989 action to modify the original support award was imminent when he elected into the plan because Karen's attorney had spoken to Richard about a "shortage" in the September 1988 support payment. Karen concludes that Richard's allocation of 5.6 percent of his gross income to the pension plan should not be deductible under Standard 4. Richard, however, asserts that he had no idea that Karen intended to petition for a child support modification and expressly denies trying to divert some of his income in order to reduce his support obligation.

Contrary to Karen's claims, nothing in the record suggests that Richard acted in bad faith by opting into the pension plan. The mere fact that Karen's attorney contacted Richard about a support shortage for the month of September 1988 would not have given Richard notice that Karen intended to file a petition for modification 6 months later. Further, the pension plan indisputably became mandatory upon Richard's election to participate in it.

Even if there is some room for debate as to the applicability of Standard 4 to these facts, the most that can be said is that the Legislature and the State Child Support Schedule Commission have not addressed this precise issue. We take the view that trial courts have the discretion to act as the court did in this case unless the Legislature has expressly curtailed that discretion. The possible risk that a child's needs might not be met if a parent is permitted to deduct some pension payments is readily eliminated by the trial court's exercise of sound discretion. The trial judge is in the best position to evaluate the evidence of a child's

---

and considered under Standards 12 and 13, but shall not be included as a deduction from gross income." (Italics ours.) Washington State Child Support Schedule Comm'n, *Washington State Child Support Schedule* Std. 4, at 3 (1989).

needs and a parent's motivation for participating in a given pension plan program. Judicial discretion is particularly critical in this area of the law and must be exercised on a case–by–case basis. Rather than restrict trial courts, we espouse the approach that, unless prohibited by statute, trial courts may exercise the discretion necessary to arrive at a wise determination of each individual case.

We therefore hold that absent evidence of a parent's bad faith in electing to participate in a second pension plan that upon election becomes mandatory, and where the needs of the children are adequately met by the modified decree, it is within the trial court's discretion to deduct the payments made into that second pension plan from gross income pursuant to Standard 4.

We next consider whether capital contributions to a partnership are "normal business expenses" that may be deducted from gross income under Standard 4 of the Child Support Schedule. Karen maintains that Richard's contributions to the Perkins Coie building partnership, his partnership "buy–in", and his contribution to the law firm are all investments that increase Richard's equity in the firm. She concludes that Richard should not be permitted to deduct those "assets" from his gross income in order to reduce his child support obligation. The Washington courts have not yet addressed this particular issue.

Standard 4 provides that "[f]or self–employed persons, normal business expenses . . . may be deducted" from gross income. Washington State Child Support Schedule Comm'n, *Washington State Child Support Schedule* Std. 4, at 3 (1989). As reflected in the declaration of Guy Bennett, the law firm's executive director, Richard's partnership position at the firm required him to make the contributions listed above as part of the "requirements and commitments" of his partnership position. The likelihood that Richard may derive a future gain from the contributions does not alter that reality.

Karen also asserts that Richard should not be permitted to deduct his capital contributions to the firm from

his gross income pursuant to Standard 4 because he did not deduct them as business expenses for federal income tax purposes. However, whether or not such expenditures may be deductible for federal income tax purposes does not control whether they are deductible for purposes of child support calculations. We hold that when a parent is required to make capital contributions in order to maintain his or her source of income and when such contributions are not made to evade greater support obligations, those contributions qualify as "normal business expenses" under Standard 4.

The third issue to be determined is whether the modified escalation clause for adjusting child support is *voidable*. In 1983 the Supreme Court ruled that an escalation clause contained within a child support order is valid if (1) it is related to the noncustodial parent's ability to pay, (2) it is related to the child's needs, and (3) it establishes a maximum amount of support which could be paid in the future. *In re Marriage of Edwards,* 99 Wn.2d 913, 918–19, 665 P.2d 883 (1983). Karen asserts that the modified escalation clause fails to comply with *Edwards* because it doesn't relate to Richard's increased ability to pay or to the needs of the children.[4] We disagree.

An escalation clause "represents a judicial compromise which allows full consideration of both the ability to pay and the child's future needs." *Edwards,* at 916. Further,

> an escalation clause . . . simply reflects the trial judge's findings that a certain percentage of the noncustodial parent's income is a reasonable and necessary amount of child support.

---

[4]We note that Standard 1 of the child support schedule provides that the schedule "shall be applied . . . c. in all proceedings in which child support is determined or modified . . . [and] . . . e. for adjusting support orders *instead of* using a cost-of-living or escalation provision." (Italics ours.) *Washington State Child Support Schedule* Std. 1, at 3 (July 1989). Because the schedule "is presumptive and must be followed in all proceedings in which child support is determined or modified" (*In re Marriage of Lee,* 57 Wn. App. 268, 274 n.3, 788 P.2d 564 (1990)), *Edwards*-type escalation clauses no longer appear to be an acceptable means of adjusting child support. However, we decline to decide this issue because the parties did not raise or brief it on appeal.

As long as the statutory criteria are considered, such awards are valid.

*Edwards*, at 918.

The present escalation clause complies with *Edwards*. First, the clause sets a maximum monthly support award of $2,500 consistent with *Edwards*. Second, the needs of the children have been adequately considered as indicated from a review of the modification decree, the parties' stipulation regarding noneconomic issues, and the unmodified portions of the original decree. Beyond the basic daily living expenses, the documents address the children's needs for health care, medical and dental insurance, counseling for one of the children, private school tuition, day–care costs, and life insurance for the children's benefit. The order also mandates an automatic reevaluation of the support award when the oldest child turns 12.

Third, the clause links the annual support adjustments to Richard's ability to pay by comparing the percentage increase in his salary in a given year to the percentage increase in the Consumer Price Index for the same year. Child support will be adjusted according to the lesser of those two amounts. It is apparent from the record that in fashioning the escalation clause, the trial court considered the potential for increases in Richard's income over time consistent with *Edwards*. Although a decrease in Richard's earnings was not contemplated in the terms of the clause, any such change, or a change in the children's needs, may be addressed in an action for modification as provided by RCW Title 26.[5] Consequently, Karen's assertion that the escalation clause is voidable is unsupported by the record.

Finally, we consider whether either party is entitled to attorney fees. Karen initially requests attorney fees on appeal in her second reply brief, but makes no argument

---

[5]We also note that either party may seek modification to eliminate the escalation clause altogether and provide for periodic support adjustments according to the terms of the Child Support Schedule.

justifying a fee award as required by RAP 18.1(b). In addition, issues raised for the first time in a reply brief will not be considered. *In re Marriage of Sacco*, 114 Wn.2d 1, 784 P.2d 1266 (1990). Therefore, Karen's request for attorney fees for her appeal is denied.

Karen also requests $500 in fees resulting from her February 1, 1991, response to Richard's motion to strike her second reply brief, claiming that Richard's arguments were "unfounded". Because a portion of Karen's second reply brief was stricken, we likewise deny this additional request for fees.

Richard has requested an award for fees generated from his motion to strike Karen's initial reply brief which was granted on December 21, 1990. However, given the disparate financial situations of the parties and our resolution of the issues, we decline to grant that request.

Richard also has asked that the court impose sanctions of $1,500 pursuant to RAP 10.7 for Karen's inclusion of stricken material in the second reply brief. Because the second reply brief does not expressly reveal the contents of the stricken matter and has in no way prejudiced Richard, we hold that sanctions are not warranted.

In sum, the Superior Court's order is affirmed.

WEBSTER, A.C.J., and AGID, J., concur.