[No. 62356-2.　En Banc.　July 13, 1995.]

HERSCHELL H. BOYD, ET AL., *Petitioners*, v. ANDREW P. DAVIS, ET AL., *Respondents*.

*Perkins, Coie,* by *Ronald Gould, Traci Sammeth,* and *Harry Schneider, Jr.,* for petitioners.

*Bogles & Gates*, by *Guy Michelson, David Goodnight* and *Samuel Osborne*, for respondents.

*William R. Bishin, Inc. P.S.*, by *William R. Bishin*, on behalf of Alternative Dispute Resolution, amicus curiae.

*Cutler & Nylander, P.S.* by *Philip Cutler* and *Robert G. Nylander* on behalf of JAMS/Endispute, Inc., amicus curiae.

DOLLIVER, J. — Herschell P. Boyd seeks reversal of a Court of Appeals, Division One, ruling reinstating an arbitration award vacated by a trial court. That ruling resulted from the Court of Appeals' conclusion that the trial court improperly examined the agreements entered into by the parties in the course of determining whether the arbitrator exceeded the scope of his power within the meaning of RCW 7.04.160(4).

In April 1992, Respondent Andrew P. Davis, M.D., agreed to purchase an ophthalmological practice from Petitioner Herschell H. Boyd, M.D. The parties simultaneously executed five separate documents to memorialize this agreement: an Asset Sale Agreement, an Employment Agreement and Covenant Not To Compete, a Security Agreement, an Option Agreement, and a Lease. Under the Employment Agreement, Respondent agreed to retain Petitioner as an employee of the practice for three years in order to facilitate the transfer of patients. Under the Asset Sale and Security Agreements, Petitioner agreed to defer payment of $900,000 of the purchase price for three years, and to guarantee a $900,000 bank loan Respondent needed to obtain to make the purchase.

Several months after execution of these documents, disputes arose over insurance, accounting and payment matters. In February 1993, Petitioner filed a complaint in arbitration, claiming that Respondent breached the aforementioned agreements. He sought rescission of all five agreements. Respondent in turn filed a counterclaim for fraud, misrepresentation and breach of contract. He sought to rescind only the Employment Agreement and Covenant Not To Compete.

The arbitrator issued an award on September 10, 1993. That award, *inter alia*, rendered the Employment Agreement and Covenant Not To Compete null and void, but gave full force and effect to the Asset Sale Agreement, Option Agreement, Security Agreement, and Lease. Petitioner appealed to the trial court, moving to vacate the arbitration award pursuant to RCW 7.04.160(4). After examining the five agreements, the trial court granted the motion to vacate, ruling

> that the arbitrator had exceeded his power in granting piecemeal rescission and that it was causing substantial injustice to the parties. The Court determined that the parties had entered into a single contract which was not severable.

Clerk's Papers, at 1254-55 (Amended Narrative Report of Proceedings). Consequently, the trial court remanded the case to a new arbitrator for rearbitration.

Respondent subsequently appealed that ruling to Division One of the Court of Appeals, claiming that the trial court improperly examined the five agreements in reaching its conclusion that they constituted a single nonseverable contract. The Court of Appeals agreed with Respondent, reversed the trial court, reinstated the arbitrator's award, and awarded Respondent attorney fees and costs incurred on appeal to both the trial court and the Court of Appeals. *Boyd v. Davis*, 75 Wn. App. 23, 876 P.2d 478 (1994). Thereafter, Petitioner filed a petition for discretionary review with this court.

## I

A trial court derives its power to vacate an arbitration award from RCW 7.04.160(4), which provides:

> In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:
>
> . . . .
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

The trial court is therefore charged with the responsibility of determining whether the arbitrator exceeded its power within the meaning of this statute. The question presently before this court is whether in the course of making such a determination the trial court is permitted to examine the contract that gave rise to the dispute. While Petitioner urges this court to answer this question in the affirmative, Respondent argues that it must be answered in the negative.

To support his argument, Petitioner relies upon a number of cases decided by the Court of Appeals. However, none of those cases is instructive because each is significantly distinguishable from the instant case.

In *Lindon Commodities, Inc. v. Bambino Bean Co.*, 57 Wn. App. 813, 790 P.2d 228 (1990) and in *Cohen v. Graham*, 44 Wn. App. 712, 722 P.2d 1388 (1986), the trial court did not examine the contract that gave rise to the dispute. In each of those cases, the trial court reviewed only the face of the arbitral award and the pertinent common or statutory law. *Lindon*, at 816 (the court referred to the Washington statute addressing contract modification); *Cohen,* at 717-18 (the court indicated that no principle of law prohibits a "covenant not to compete" clause).

Admittedly, a contract was examined by each of the trial courts in the remainder of the Court of Appeals cases cited by Petitioner. However, each of those trial courts reviewed the contract in order to ascertain the law governing the disputed point. *ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 738, 862 P.2d 602 (1993) (the court examined an arbitration clause); *Marine Enters., Inc. v. Security Pac. Trading Corp.*, 50 Wn. App. 768, 775-76, 750 P.2d 1290 (1988) (the court scrutinized a contract clause regarding production); *Kennewick Educ. Ass'n v. Kennewick Sch. Dist. 17*, 35 Wn. App. 280, 282, 666 P.2d 928 (1983) (the court referred to a contract clause making the governing law that of Washington); *Agnew v. Lacey Co-Ply*, 33 Wn. App. 283, 288-89, 654 P.2d 712 (1982) (the

court looked to the contract's attorney fees clause); *Moen v. State*, 13 Wn. App. 142, 145, 533 P.2d 862 (1975) (the court reviewed a contract clause granting the plaintiff extra construction costs). In the present case, the contract is silent with respect to the issues in dispute: whether the five agreements constitute a single contract, and, if so, whether that contract is severable. Therefore, the trial court's examination of the contract could not have been for the purpose of ascertaining the governing law.

■■ Common law governs in the absence of contract provisions addressing the issues.

> "As a general rule . . ., where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other."

*Levinson v. Linderman*, 51 Wn.2d 855, 859, 322 P.2d 863 (1958) (quoting 17 C.J.S. *Contracts* § 298, at 714 (1939)). Whether separate agreements are in fact part of one transaction depends upon the intention of the parties as evidenced by the agreements. *Don L. Cooney, Inc. v. Star Iron & Steel Co.*, 12 Wn. App. 120, 122, 528 P.2d 487 (1974).

> "Whether a contract is entire or divisible depends very largely on its terms and on the intention of the parties disclosed by its terms. As a general rule a contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration."

(Footnote omitted.) *Saletic v. Stamnes*, 51 Wn.2d 696, 699, 321 P.2d 547 (1958) (quoting *Traiman v. Rappaport*, 41 F.2d 336, 338 (3d Cir. 1930)).

■ Each of these principles of common law requires a court to discern the intent of the parties. In the present case, the trial court reviewed the five agreements specifically for the purpose of discerning this intent. In effect, therefore, it interpreted those agreements. Such an undertaking is tantamount to trying the case de novo. Es-

sentially, the question before this court is therefore whether a trial court reviewing an arbitral award is permitted to conduct a trial de novo. We have previously answered that question in the negative. We reaffirm that answer today.

In *School Dist. 5 v. Sage*, 13 Wash. 352, 43 P. 341 (1896), this court stated:

> [I]nasmuch as there is no provision in the statute requiring arbitrators to file or preserve the evidence received upon the hearing, it would seem to follow that the errors which will sustain an exception to an award on the ground indicated must be discovered by an examination of the award alone. If it was the intention of the legislature to require the court, upon hearing exceptions taken to awards, to examine the evidence submitted to the arbitrators, or, in other words, to try the cause *de novo*, it is but reasonable to presume that they would have so declared. And in the absence of such provision, we think we are justified in adopting the rule announced in many well considered cases, and which we believe is subject to but few exceptions, viz., that the errors and mistakes contemplated by the statute must appear on the face of the award, or, at least, in some paper delivered with it. . . .

*Sage*, at 356-57. The reasoning behind the *Sage* court's holding is no less compelling today than it was in 1896 when the decision was first rendered. Now, as then, "[t]he [arbitration] statute does not require a separate statement of findings of fact and conclusions of law in an arbitrator's award". *Barnett v. Hicks*, 119 Wn.2d 151, 156, 829 P.2d 1087 (1992).

■ ■ Encouraging parties voluntarily to submit their disputes to arbitration is an increasingly important objective in our ever more litigious society. This objective would be frustrated if a trial court were permitted to conduct a trial de novo when it reviews an arbitration award. Arbitration is attractive because it is a more expeditious and final alternative to litigation.

> The very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned. The object is to avoid what some feel to be the formalities, the delay, the

expense and vexation of ordinary litigation. Immediate settle-ment of controversies by arbitration removes the necessity of waiting out a crowded court docket. . . .

(Citations omitted.) *Barnett*, at 160. Arbitration's desirable qualities would be heavily diluted, if not expunged, if a trial court reviewing an arbitration award were permitted to conduct a trial de novo. Accordingly, that court cannot search the four corners of the contract to discern the parties' intent, as did the trial court in this case.

Arbitrators, when acting under the broad authority granted them by both the agreement of the parties and the statutes, become the judges of both the law and the facts, and, unless the award on its face shows their adoption of an erroneous rule, or mistake in applying the law, the award will not be vacated or modified. . . .

*Northern State Constr. Co. v. Banchero*, 63 Wn.2d 245, 249-50, 386 P.2d 625 (1963). In the present case, the face of the arbitral award alone does not exhibit an erroneous rule of law or a mistaken application of law. Therefore, no sup-port exists for Petitioner's position that the arbitrator exceeded his power within the meaning of RCW 7.04.160(4) when he rendered the award. Thus, that award cannot be disturbed.

## II

RCW 4.84.330 provides:

In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party . . . shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

In *Singleton v. Frost*, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987), this court stated:

There is no authority to support an interpretation of RCW 4.84.330 other than as mandating an award of reasonable at-

torney's fees to the prevailing party where a contract so provides. . . .

In the present case, provision 20 of the Asset Sale Agreement provides:

**Attorneys' Fees.** In the event either party brings an action against the other to enforce any provision of this Agreement, the prevailing party in such action shall be entitled to a reasonable sum as attorneys' fees.

Clerk's Papers, at 69.

■ In accordance with this contract provision, the arbitrator awarded Respondent reasonable attorney fees and costs. The trial court vacated that award. The Court of Appeals reinstated the award, and also awarded Respondent attorney fees and costs incurred on appeal to the trial court and the Court of Appeals. It is well settled law in this State that:

A provision in a contract providing for the payment of attorneys' fees in an action to collect any payment due under the contract includes both fees necessary for trial and those incurred on appeal as well. . . .

*Granite Equip. Leasing Corp. v. Hutton*, 84 Wn.2d 320, 327, 525 P.2d 223 (1974) (citing *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968)).

Petitioner contests the decision of the Court of Appeals to award Respondent attorney fees and costs incurred on appeal. He contends that the court should not have considered Respondent's request for fees and costs because it was made in Respondent's reply brief to the Court of Appeals, not in his opening brief to that court. We disagree.

Petitioner draws support for his position from *In re Marriage of Sacco*, 114 Wn.2d 1, 784 P.2d 1266 (1990) and *In re Marriage of Mull*, 61 Wn. App. 715, 812 P.2d 125 (1991). In both of those cases an appellate court declined to address a request for attorney fees because it was made for the first time in a reply brief. *See Sacco*, at 5 ("We deny [plaintiff's] request for attorney fees because she raised

this issue in the reply brief, not the opening brief. . . . This court does not consider issues raised for the first time in a reply brief".); *Mull*, at 724 ("issues raised for the first time in a reply brief will not be considered. . . . Therefore, [plaintiff's] request for attorney fees for her appeal is denied".).

However, neither of those cases is controlling or even instructive. In each of those cases, an appellate court refused to address an attorney fees issue which was not discussed in the opening brief to that particular appellate court. In the present case, the Court of Appeals in fact decided the attorney fees issue despite Respondent's failure to address the issue in his opening brief to that court.

The critical question is therefore whether such a failure bars an appellate court from deciding the issue or simply provides that court with the option not to decide the issue. RAP 12.1(b) provides:

> If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

This rule suggests that it is within the discretion of an appellate court to decide an issue regardless of which, if any, brief addresses it.

In this case, the Court of Appeals exercised its discretion to decide the attorney fees issue. We will not disturb that decision. Additionally, in accordance with provision 20 of the Asset Sale Agreement, we award Respondent attorney fees and costs incurred in the course of review by the Supreme Court. Affirmed.

SMITH, GUY, JOHNSON, and ALEXANDER, JJ., concur.

Utter, J. (concurring)* — I concur with the holding of the majority that no support exists for the Petitioners' position that the arbitrator exceeded his power within the meaning of RCW 7.04.160(4) and that the award cannot be disturbed. I also concur with the award of attorney fees and costs to Respondents. While I believe the majority has reached the right result, it cites the wrong reason for its conclusion. By so doing, its reasoning may cause confusion in future cases and weaken the purposes sought to be achieved by the clear language of the Legislature.

The majority mistakenly relies upon language in a previous case which recited language of a statute not now in effect for its conclusion that the arbitration award to be vacated must show that "the award on its face shows their adoption of an erroneous rule, or mistake in applying the law . . .". *Northern State Constr. Co. v. Banchero*, 63 Wn.2d 245, 249-50, 386 P.2d 625 (1963). The majority also relies upon an even earlier case, *School Dist. 5 v. Sage*, 13 Wash. 352, 43 P. 341 (1896), in support of the rule that errors and mistakes contemplated by the statute must appear on the face of the award, or at least in some paper delivered with it.

The difficulty with these and other cases cited by Petitioners is that they rely upon the "error of law/face of the award" doctrine, which depends upon the text of earlier versions of RCW 7.04.160(4) not now in effect. This language finds no expression or support in the current statute enacted in 1943. Laws of 1943, ch. 138. Previous cases overlook the fact that the Washington arbitration statute has been amended several times. They mistakenly carry over to the current statute interpretations based upon prior statutes with no attention paid to the differences in language.

Rem. Comp. Stat. § 424 (1922) provided:

The party against whom an award may be made may except in writing thereto for either of the following causes:

---

*Judge Robert F. Utter is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(1) (amend. 38).

(1) That the arbitrators or umpire misbehaved themselves in the case;

(2) *That they committed an error in fact or law*;

(3) That the award was procured by corruption or other undue means.

(Italics mine.) All cases adopting the "error of fact or law" doctrine rely on the provisions of this repealed statute. *Northern State Constr. Co. v. Banchero*, 63 Wn.2d 245, 249-50, 386 P.2d 625 (1963) relied on *Hatch v. Cole*, 128 Wash. 107, 222 P. 463 (1924) and *Puget Sound Bridge & Dredging Co. v. Frye*, 142 Wash. 166, 252 P. 546 (1927) for the "error of law/face of the award rule", both of which relied in turn on the language of the statute which was then in effect, but was repealed before *Northern State* was decided. *Hatch*, at 109; *Puget Sound Bridge*, at 176-77. *Thorgaard Plumbing & Heating Co. v. County of King*, 71 Wn.2d 126, 426 P.2d 828 (1967) relied on *Northern State* to continue the erroneous reliance on the language of a repealed statute.

The current statute is substantially different. Rather than allowing for exception to the arbitrator's award when the arbitrator "committed an error in fact or law", Rem. Comp. Stat. § 424(2) (1922), the current statute allows for application for an order vacating the award only where "the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made". RCW 7.04.160(4). This section does not contain a provision providing for vacation of an arbitrator's award based upon an error of law. For this reason, all cases referring to the "error in fact or law" language contained in the former statute are neither persuasive nor controlling authority for our holding in this case.

The language concerning arbitrators' "errors of law" was eliminated when RCW 7.04.160 was adopted by the Legislature in 1943. We have affirmed in *Barnett v. Hicks*, 119 Wn.2d 151, 829 P.2d 1087 (1992), that the scope of

review for arbitral decisions is very narrow and does not include review of the merits of the case. We also noted that our review is strictly limited to statutory grounds. *Barnett*, at 156. *See also Puget Sound Bridge*, 142 Wash. at 177 ("there is in this state no such thing as a common law arbitration . . . the proceeding is wholly statutory"). This court should not resurrect the language of an old statute to give meaning to a body of law specifically rejected through repeal by the Legislature.

Washington is not the only state to struggle with the newer narrow language of arbitral statutes limiting appeal from an arbitrator's award. In *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 832 P.2d 899, 10 Cal. Rptr. 2d 183 (1992), the California Supreme Court reviewed the history of the "error of law/face of the award" doctrine in California and concluded that an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in Cal. Civ. Proc. Code § 1286.2 to vacate and § 1286.6 for a correction. In effectively overruling the common law rule and mandating instead the exclusive use of the statute, the court stated that "the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review". *Moncharsh*, at 33.

The California statute is for all practical purposes identical to the current Washington statute. Section 1286.2, "Grounds for vacation of award", of the California Code of Civil Procedure provides that "the court shall vacate the award if the court determines . . . (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted". Cal. Civ. Proc. Code § 1286.2 (West Supp. 1995). The *Moncharsh* court concluded that the only bases for judicial review of an arbitration were those found in the pertinent statute and the existence of an error of law apparent upon the face of the award does not, under the statute, provide grounds for judicial review. It further noted that its holding was con-

sistent with that of the majority of states. *Moncharsh*, at 27-28.

The current Washington statute provides that arbitral awards may be vacated by a court only on very narrow grounds. For this reason, in the context of issues raised by this case, an arbitral award should only be vacated if the arbitrator exceeded his powers and then only if the trial court "is satisfied that substantial rights of the parties were prejudiced thereby". RCW 7.04.160(4).

A ruling on these grounds furthers the purpose of the arbitration statute. Parties enter into arbitration agreements for numerous reasons. Among them are to reduce expenses of litigation and to ensure a speedy and final resolution of their disputes. The expectation of finality is at the very heart of any arbitration agreement. Jonathan Yarowsky, *Judicial Deference to Arbitral Determinations: Continuing Problems of Power and Finality*, 23 UCLA L. Rev. 936, 948-49 (1976) ("Even in the absence of an explicit agreement [as to the final and binding nature of an arbitral award], conclusiveness is expected; the essence of the arbitration process is that an arbitral award shall put the dispute to rest"). *See also* Thomas Oehmke, Commercial Arbitration § 6:10, at 140 (1987) ("parties can take a certain measure of comfort in knowing that the arbitrator's award will almost certainly mean an end to the dispute"). The parties have thus bargained and contracted for a final and binding award. Absent the presence of the very narrow grounds articulated in the statute, our courts should not disturb such an agreement.

Another reason parties enter into arbitration agreements is to keep their confidences and secrets out of the public eye. The facts of this case illustrate clearly why at the initiation of this transaction the parties might have wished to keep all of the details of Dr. Boyd's conduct out of the public eye. In addition, these facts illustrate the tragedy of delay. One party has been unable to proceed in a reasonably expeditious manner in establishing his new practice. The other party has seen allegations of withhold-

ing information about serious professional misconduct spread across the pages of these law reports as he attempts to pursue a different course of action for his career.

Industry suffers as well when, after agreeing to arbitration clauses, the parties' industrial secrets could be dragged through an extensive litigation and appellate process. This in spite of having bargained for arbitration and its speedy, private resolution in the original contract. Higher costs, risks of exposure of secrets and inability to quickly enforce an award all have the potential effect of discouraging arbitration in Washington if the language of our current statute is not followed.

For these reasons, while I agree with the result reached by the majority opinion, I cannot agree with the reasoning used by the majority based upon a statute no longer in effect. I urge that the narrow language of RCW 7.04.160(4) requiring an appellant to show "the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made" be given its full meaning. The failure of Petitioners to show the arbitrator exceeded his powers or so imperfectly executed them that a final and definite award upon the subject matter was not made should be the sole reason for rejection of their claim.

DURHAM, C.J., and MADSEN and TALMADGE, JJ., concur with UTTER, J. Pro Tem.

Reconsideration denied September 7, 1995.