IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MIKE GHIAS,<br><br>    Respondent/Cross Appellant,<br><br>v.<br><br>BROOKE ANDERSON,<br><br>    Appellant/Cross Respondent. | No. 87661-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Brooke Anderson and Mike Ghias[1] both appeal from a trial court order that vacated one aspect of an arbitrator's award. As Washington courts have observed on numerous occasions, grounds to vacate an arbitrator's award are exceedingly narrow and do not include an alleged misinterpretation of a contract. The question before us is not whether the arbitrator's interpretation is correct, or even persuasive, but whether the arbitrator interpreted the contract. Here, the arbitrator expressly construed the relevant contract when resolving the issue of succession and implicitly did so when determining that the parties' contract did not preclude an award of fees on an equitable basis. Disagreement with the arbitrator's interpretation did not permit the court to disturb the arbitration award. We reverse the trial court's order to the extent that it partially vacated the arbitrator's award and remand.

---

[1] Ghias' first name is Mehdi, but he commonly uses Mike which is the name he used in filing the motion to vacate at issue here. As such, the case caption from the trial court also identifies him as Mike.

FACTS

In 2017, the shareholders of CustomArray Inc. agreed to sell their shares to GenScript USA Holding Inc.[2]  *Anderson v. CustomArray, Inc.*, No. 86488-2-I, slip op. at 2 (Wash. Ct. App. Oct. 6. 2025) (unpublished), https://www.courts.wa.gov/ opinions/pdf/864882.pdf.  In connection with that sale, the shareholders, including Anderson and Ghias, executed a stock purchase agreement (SPA) and a shareholder agreement.  *Id.*  In the SPA, the selling shareholders designated Ghias as the post-closing shareholders' representative.  *Id.*  The shareholder agreement included an arbitration provision.

In 2022, Anderson initiated an arbitration, alleging that Ghias was failing to perform the duties required of the shareholders' representative, and the matter proceeded to three-day hearing before an arbitrator.  *Id.* at 3.  In an 11-page written ruling, the arbitrator concluded that Ghias had not fulfilled his obligations and ordered that he be removed from the shareholders' representative position.  The arbitrator further concluded that although the terms of the SPA named Ghias' brother, Asghar,[3] as first-in-line for succession and Anderson as second-in-line, the language of those provisions suggested that they applied only if Ghias resigned or could not perform the required duties because of a disability.  The arbitrator determined that the SPA provisions did not "appear to contemplate a situation in which Mr. Ghias would be 'removed' from service by order of an arbitrator."

---

[2] Some of the background facts are derived from this court's recent unpublished decision in a related appeal, the remainder are taken from the record underlying this appeal.
    Pursuant to GR 14.1, we may cite to unpublished opinions as necessary for a well-reasoned opinion.  *Anderson v. CustomArray* is cited here for the sole purpose of establishing the procedural facts of the instant case.
[3] Because Ghias and his brother share the same last name, we refer to Asghar by his first name for clarity and intend no disrespect in doing so.

Therefore, the arbitrator concluded that the SPA did not "constrain" the selection of a successor, and designated Anderson.

In addition, the arbitrator noted that the arbitration provision in the shareholder agreement provided that "[e]ach party shall pay their own attorneys' fees and other costs." Nevertheless, the arbitrator concluded there was an equitable basis to warrant an award of attorney fees to Andersen under *Li v. Tang.* 87 Wn.2d 796, 801, 557 P.2d 342 (1976) (awarding fees where prevailing party's action was necessary to "compel" compliance with partnership fiduciary duties and preserve partnership assets). On that basis, the arbitrator awarded $275,037.26 in attorney fees to Anderson.

Ghias filed a motion in superior court seeking to vacate two aspects of the final award: the appointment of Anderson as the successor shareholders' representative and the award of attorney fees to Anderson. Anderson opposed the motion.

After considering the motion, supplemental briefing, and the parties' arguments, the trial court granted the motion to vacate "on the basis that the [a]rbitrator exceeded his powers in deviating from the contractual order of succession." Therefore, the court vacated the portion of the final award designating Anderson as the successor shareholders' representative and remanded to the arbitrator for further proceedings on that issue. The court denied the request to vacate the attorney fee award and denied both parties' requests for fees in connection with the motion to vacate.

Both parties timely appealed.

ANALYSIS

In his appeal, Anderson contends that Ghias' motion to vacate was untimely and the trial court should have dismissed it on that basis. Anderson also contends that the trial court erred when it vacated the arbitrator's designation of a successor shareholders' representative. On cross appeal, Ghias claims the trial court was also required to vacate the award of attorney fees. As explained herein, we agree with Anderson that the trial court erred in vacating the portion of the award designating the successor shareholders' representative and otherwise affirm.

I.      Standard of Review

Our courts encourage arbitration as a simpler, faster, and less expensive alternative to litigation. *Mainline Rock & Ballast, Inc. v. Barnes, Inc.*, 8 Wn. App. 2d 594, 608, 439 P.3d 662 (2019). To prevent parties from frustrating this goal by relitigating arbitration awards, we afford significant deference to arbitrators. *Boyd v. Davis*, 127 Wn.2d 256, 262-63, 897 P.2d 1239 (1995). Washington's uniform arbitration act, chapter 7.04A RCW, governs both the arbitration process and the enforcement of arbitration awards. *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 85-86, 546 P.3d 385 (2024).

Our review of an arbitrator's award is limited "to that of the court which confirmed, vacated, modified, or corrected that award." *Cummings v. Budget Tank Removal & Envtl. Servs., LLC*, 163 Wn. App. 379, 388, 260 P.3d 220 (2011). We review only whether one of the statutory grounds to vacate an award exists.

*Salewski v. Pilchuck Veterinary Hosp., Inc.*, 189 Wn. App. 898, 903-04, 359 P.3d 884 (2015).

RCW 7.04A.230 prescribes narrow circumstances for vacating an arbitral award. Relevant here, vacatur is required where the "arbitrator exceeded the arbitrator's powers." RCW 7.04A.230(1)(d). In considering a motion to vacate an award on this ground, we examine whether the arbitrator decided a nonarbitrable issue, or whether there is an error of law on the face of the award. *Agnew v. Lacey Co-Ply*, 33 Wn. App. 283, 288, 654 P.2d 712 (1982); *Broom v. Morgan Stanley DW Inc.*, 169 Wn.2d 231, 239, 236 P.3d 182 (2010).

> The "facial legal error standard is a very narrow ground for vacating an arbitral award." It does not extend to a potential legal error that depends on the consideration of the specific evidence offered or to an indirect sufficiency of the evidence challenge.

*Salewski*, 189 Wn. App. at 904 (footnote omitted) (quoting *Broom*, 169 Wn.2d at 239). This standard does not allow the court to consider the merits of the case or reexamine the evidence. *Broom*, 169 Wn.2d at 239.

## II. Timeliness of Motion to Vacate

As an initial matter, Anderson contends the trial court erred when it declined to dismiss Ghias' motion to vacate as untimely.

RCW 7.04A.230(2) requires a party to file a motion to vacate an arbitration award within 90 days of receipt of the arbitration award. The arbitrator issued the final award on June 27, 2024, and there is no dispute that Ghias filed a "Motion to Vacate Arbitration Award in Part" on August 14, 2024, within 90 days of that date. Nor is there any dispute that Ghias' filing complied with CR 7(b), governing

"motions and other papers," which requires that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, *shall be made in writing*." (Emphasis added) (formatting omitted.) Anderson nevertheless contends that Ghias failed to "complete the making of a motion" because, although required to do so by the "controlling statute," RCW 7.04A.050(1), Ghias failed to file and serve a notice of a hearing on his motion to vacate within 90 days.

RCW 7.04.050(1) provides, in relevant part, that "an application for judicial relief under this chapter must be made by motion *and heard in the manner and upon the notice provided by law or rule of court for making and hearing motions*." (Emphasis added.) Because King County local court rules require a party to file a "Notice of Court Date" together "with the motion,"[4] Anderson claims that the motion was incomplete when Ghias filed it without noting a hearing and, therefore, untimely for purposes of RCW 7.04A.230(2).

Nothing in the unambiguous language of RCW 7.04A.230(2) suggests that in addition to filing a motion within the 90-day statutory limitation period, a party must also properly note a motion for a hearing on that motion within the same timeframe. Anderson's interpretation ignores the conjunctive "and" in that provision of RCW 7.04.050(1), which distinguishes between making a motion and arranging for the motion to be heard. While RCW 7.04A.050 requires compliance with procedural rules to note a motion for a hearing, that requirement is not tied to the statutory limitation period under RCW 7.04A.230(2). The trial court did not err when it declined to dismiss Ghias' motion as untimely.

---

[4] *See* KING COUNTY SUPER. CT. LOCAL CIV. R. 7(b)(5)(A).

III.    Contract Interpretation

As to the merits, Anderson contends the trial court erred when it vacated the arbitrator's decision designating a successor because the arbitrator's interpretation of the relevant contract is not subject to judicial review. The arbitrator explained the decision regarding designation of the successor shareholders' representative as follows:

> The Agreement provides in pertinent part that "[i]f Mike Ghias shall resign or otherwise becomes unable to serve as the Shareholders' Representative, then Asghar Ghias shall succeed and be the Shareholders' Representative . . .". A fair reading of this provision suggests that it does not contemplate the circumstances that presently exist. Rather it seems to envision circumstances in which Mr. Ghias would choose to no longer serve or would suffer some disability that would render him unable to serve. It does not appear to contemplate a situation in which Mr. Ghias would be "removed" from service by order of an arbitrator. This analysis is bolstered by the different language used in Article 9.4 in the instance of successor representatives. For example, as to Asghar Ghias the provision states that if Asghar Ghias "shall resign or otherwise become *unavailable to serve*, then Brooke Anderson shall succeed . . .". (emphasis added). Being "unavailable" connotes not being able to be used or not being free to do something. Therefore, becoming unavailable to serve appears to contemplate a circumstance in which the Shareholders' Representative becomes disqualified to serve as a result of an order.

The arbitrator then concluded that "[g]iven this interpretation of the contractual language," the SPA did not "constrain" the selection of a successor shareholders' representative. The arbitrator designated Anderson to serve in that capacity.

As Anderson notes, it is well-settled under Washington law that a party cannot establish legal error on the face of an arbitration award by demonstrating error in interpreting a contract. *Boyd*, 127 Wn.2d at 261-62. For instance, in *Boyd*, the parties arbitrated disputes that involved several agreements executed in

connection with the sale of an ophthalmology practice. 127 Wn.2d at 258. At arbitration, instead of voiding all five agreements as one party requested, the arbitrator voided only one of the agreements. *Id*. at 259. The trial court vacated the award, concluding that the arbitrator exceeded his authority in "'granting piecemeal rescission'" and determined that contrary to the arbitrator's ruling, the agreements were a "'single contract which was not severable.'" *Id*. Reversing the trial court's order vacating the award, the Supreme Court held that judicial review of an arbitration award does not encompass review of underlying contracts, because reviewing the arbitrator's interpretation of a contract is, essentially, "trying the case de novo." *Id*. at 261-62. Subsequent cases have reaffirmed the principle that the facial legal error doctrine does not allow a court to examine the merits or relevant contract language or "review an arbitrator's interpretation of a contract." *Mainline Rock*, 8 Wn. App. 2d at 610; *see also Cummings*, 163 Wn. App. at 389-90 (arbitrator's contract interpretation not subject to judicial review, and prerequisite facial legal error not established, absent evidence that arbitrator "misunderstood the law of contracts or adopted an erroneous rule"); *State v. Am. Tobacco Co.*, 28 Wn. App. 2d 452, 479, 537 P.3d 303 (2023) (observing grounds for review under both state and federal law are "similarly narrow" and require more than showing of error because, in agreeing to arbitrate, parties bargain for arbitrator to interpret and apply relevant agreements).

Ghias' motion to vacate asserted that the arbitrator disregarded the language of the contract and the arbitrator's interpretation of the SPA was "not reasonable," "illogical," and "contrary to the plain language" of the SPA provisions

quoted in the final award. At the hearing on the motion, the trial court indicated that the arbitrator's decision was problematic because it was "obvious from the face of the award" that the arbitrator "skipped over the line of succession that's in the contract." When Anderson's counsel pointed to the arbitrator's conclusion that the SPA provisions did not apply because of the meaning he ascribed to the phrase "unable to serve," the trial court expressed disagreement with the arbitrator's interpretation of the contract language and stated, "Well, I think it does [apply]. I think by virtue of the [the arbitrator's] decision, [Ghias] is unable to serve. He is prohibited from serving, and, therefore, unable to serve."

According to Ghias, the trial court was required to vacate the award because the arbitrator misapplied Delaware contract law,[5] which requires giving effect to clear and unambiguous contractual language, and because the arbitrator either ignored or "re-wrote" the language of the contract "under the guise" of construing it. These arguments are unavailing because the question before us is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [the arbitrator] got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

It is clear from the face of the arbitrator's final award that the arbitrator interpreted the contract. The arbitrator assigned meaning to the phrase "unable to serve," distinguished it from being "unavailable," and concluded that it meant something different from being prohibited from serving due an adjudicator's decision. Based on the determination that Ghias was not "unable to serve," the

---

[5] The SPA provides that Delaware law governs claims arising out of SPA.

arbitrator concluded that the provision designating Asghar as successor did not apply. Although Ghias claims otherwise, this analysis expressly involved an interpretation and application of the SPA. While there may be room to disagree with the arbitrator's interpretation of the contract, nothing in the ruling suggests a misapplication of contract law or other facial error of law.

Ghias further claims the arbitrator "compounded" the error of misinterpretation by "altering the contractual rights of ten (10) non-party Selling Shareholders." But, again, Ghias fails to identify an obvious legal error "'recognizable from the language of the award'" related to the non-party shareholders' rights. *Salewski*, 189 Wn. App. at 904 (internal quotation marks omitted) (quoting *Cummings*, 163 Wn. App. at 389). The record before us does not include the materials that were before the arbitrator, and the arbitrator's ruling does not establish that the selling shareholders had "no knowledge" of the proceeding. Ghias participated in the arbitration in his capacity as the shareholders' representative, which required that he keep the other shareholders informed of material decisions. There is nothing in the record to suggest that he did not represent their rights in this matter.

Because the arbitrator did not exceed his powers and the arbitration award exhibits no facial legal error, there was no basis to vacate the award as to the arbitrator's selection of a successor shareholders' representative, and the trial court erred in doing so.

IV.     Arbitral Attorney Fees

In his cross appeal, Ghias challenges the trial court's denial of his motion to vacate the arbitrator's award of fees to Anderson.  Ghias asserts that the fee award is clear error because the arbitration provision in the shareholder agreement, which again, provides that each party "shall pay their own attorneys' fees and costs," precludes an award of fees on any basis.  The crux of the parties' dispute on this issue is whether the agreement must be interpreted to exclude such an award, despite it not expressly addressing, much less waiving, any party's right to fees potentially awardable under a statutory or recognized ground of equity.  Ghias maintains that the fee provision in the shareholder agreement cannot be interpreted to permit any award of fees.  He further contends that construing the provision as a "mere recital" of the "American rule" would ascribe to it "no meaning at all."[6]

However, it is evident that here, too, the arbitrator interpreted the contractual attorney fee provision and concluded that it did not bar an award of fees "under a principle of equitable fee-shifting."  As explained in Part III, *supra*, we do not review the merits of the arbitrator's decision or construction of the relevant contract, whether or not we agree.  *See Mainline Rock*, 8 Wn. App. 2d at 610.  Ghias' claim on this issue simply advocates for a different interpretation of contractual language and fails to establish facial legal error.[7]  The trial court did not err when it denied the motion to vacate the arbitrator's award of attorney fees.

---

[6] *See Mehlenbacher v. DeMont*, 103 Wn. App. 240, 244, 11 P.3d 871 (2000) (explaining under "American rule" fees are not recoverable unless authorized by statute, contract, or recognized ground of equity.

[7] Other than pointing out that there was no contractual fee provision between the parties in *Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342(1976), Ghias does not otherwise challenge the arbitrator's reliance on the principles articulated in that case.

- 11 -

V.  Attorney Fees on Appeal

Citing RAP 18.1(a) and RCW 7.04A.250(3), both parties request reasonable attorney fees on appeal.  RCW 7.04A.250(3) provides in relevant part as follows:

> On application of a prevailing party to a contested judicial proceeding under RCW 7.04A.220, 7.04A.230, or 7.04A.240, the court may add to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an [arbitration] award, attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made.

An appeal qualifies as a "'contested judicial proceeding.'"  *See Saleemi v. Doctor's Assocs., Inc.*, 166 Wn. App. 81, 98, 269 P.3d 350 (2012) (quoting RCW 7.04A.250(3)), *aff'd*, 176 Wn.2d 368, 292 P.3d 108 (2013).

Because Anderson prevails here, we grant his request for reasonable attorney fees on appeal contingent on his compliance with the procedural requirements under the RAPs.

Reversed and remanded for reinstatement of the arbitrator's award.

WE CONCUR: