[No. 8086–5–I.   Division One.   May 11, 1981.]

LENT'S, INC., *Respondent,* v. SANTA FE ENGINEERS, INC., ET AL, *Appellants.*

*Ferguson & Burdell* and *Henry C. Jameson,* for appellants.

*Bogle & Gates, Richard A. Bersin,* and *James A. Smith,* for respondent.

SWANSON, J.—This appeal involves the validity of an arbitration award vacated by the trial court on the ground that it was not rendered within 30 days of the close of the arbitration hearings as required by RCW 7.04.090.[1] Appellants, Santa Fe Engineers, Inc., and Howard Electric Co., contend that the award was rendered in a timely manner or, in the alternative, that respondent, Lent's, Inc., waived any objection it had to the timeliness of the award. In a cross appeal, Lent's contends that the trial court erred in

---

[1] "If the time within which the award shall be made is not fixed in the arbitration agreement, the award shall be made within thirty days from the closing of the proceeding, and any award made after the lapse of such thirty days shall have no legal effect, unless the parties extend the time in which said award may be made or ratify any award made after the expiration of the thirty day period. Any extension of time or ratification of the award shall be in writing and signed by all parties to the arbitration." RCW 7.04.090.

not holding that the arbitration award demonstrated on its face an error in the application of law.

The pertinent facts are these: Santa Fe Engineers, a California corporation, was prime contractor for construction of training facilities at the Naval Torpedo Station in Keyport, Washington. Howard Electric Co., a Colorado corporation, and Lent's, Inc., a Washington corporation located in Bremerton, were, respectively, the electrical and mechanical subcontractors for the project.

The subcontracts between Santa Fe and Howard and Santa Fe and Lent's contained a clause providing that either party could demand that a dispute be submitted to arbitration in accordance with the rules of the American Arbitration Association (AAA). During construction, a dispute arose concerning which one of the two subcontractors was responsible for furnishing and installing electric motor starters and disconnect switches for certain mechanical equipment. Santa Fe, as general contractor, directed Howard to do the work, but it withheld $158,949 from Lent's pending resolution of the dispute. On March 20, 1977, Howard invoked the arbitration clause of the contract and demanded arbitration of the motor starter dispute. Santa Fe, in turn, made demand upon Lent's for arbitration of the same dispute. By agreement, the separate proceedings were consolidated, and a Seattle attorney was appointed arbitrator. The stipulation for consolidation of the hearings also specified that the arbitration was to be governed by the Construction Industry Arbitration (CIA) rules of the AAA.

Hearings were held on November 15 and 16, 1978, during which testimony was taken and exhibits introduced. By letter dated November 30, 1978, the tribunal administrator for the AAA advised the parties that the hearing would be held open until December 5, 1978, to permit submission of posthearing summations. The letter further advised that the arbitrator's award would be transmitted within 30 days of the close of the hearing, or January 4, 1979. Despite that the deadline for the submission of briefs was December 5,

Lent's submitted a brief dated December 14, 1978. Over Howard's written objection, the arbitrator agreed to consider Lent's brief and briefs of the other parties if they desired to submit them. The arbitrator also stated that he nonetheless anticipated that the award would be rendered by January 4, 1979.

On January 4, 1979, the tribunal administrator sent another letter to the parties indicating that the arbitrator's decision was not ready and requesting that the parties extend the date for the award until January 15, 1979. Santa Fe and Howard executed a written extension, but Lent's neither agreed nor objected to the extension. On January 12, 1979, the arbitrator prepared his award and mailed it to the AAA. The award was received by the AAA on January 15, retyped on an AAA form, signed, and mailed to the parties on January 16, 1979.

The award was substantially in favor of Howard Electric, awarding it $158,948 as the cost of furnishing and installing the motor starters and switches. Lent's was awarded $15,000 which had been wrongfully withheld by Santa Fe. The arbitrator also indicated in his January 12 letter that he would explain the award if requested by the parties. In response to a request by Lent's, the arbitrator gave reasons for the award in a letter dated January 25, 1979.

On April 9, 1979, Lent's filed an action in superior court to vacate the award on two grounds: (1) that the award had not been rendered within 30 days of the close of the hearing as required by RCW 7.04.090, and (2) that the award was clearly erroneous as a matter of law. The trial court disagreed that the award was erroneous as a matter of law, but it granted the motion to vacate because the award was not made within the time specified by the statute.

In this appeal, Santa Fe first argues that federal law, rather than state law, governs the enforceability of the award by virtue of either a choice of law provision in its subcontract with Lent's or the supremacy clause of the United States Constitution. We do not reach that issue, however, because the trial court erred in concluding that

the award was without legal effect under RCW 7.04.090.

The trial court held that the statute is mandatory and its provisions may not be waived. We agree that the statute's plain language provides that the 30–day time for award may be altered only be execution of a written extension or ratification signed by all the parties. However, the trial court's oral decision reveals that in reaching its conclusion it focused on only part of the statute. The court failed to give effect to the first clause of the statute which limits its application to those situations where "the time within which the award shall be made is not fixed in the arbitration agreement, . . ."

■ Arbitration is consensual and contractual in nature. *Balfour, Guthrie & Co. v. Commercial Metals Co.*, 93 Wn.2d 199, 607 P.2d 856 (1980). The statute recognizes that the parties may, as they have here, establish a time for the award in the arbitration agreement. The disputes clause of the respective subcontracts did not set forth a time limit in terms of specific days or weeks. However, "The parties to an arbitration fix the time within which an award must be made, either by a specific agreement or by accepting the rules of an agency referred to in their arbitration clause. Parties enjoy considerable freedom in this regard." M. Domke, *Commercial Arbitration* § 29.01 (1968); *accord, Fagnani v. Integrity Fin. Corp.*, 53 Del. 193, 167 A.2d 67 (1960).

The dispute clause of the subcontracts provide that "either party may demand that the dispute be submitted to arbitration in accordance with the rules of the American Arbitration Association." Further, the stipulation for consolidation of the hearings specified that the Construction Industry Arbitration rules of the AAA were to govern the arbitration, and no claim is now made that those rules are inapplicable.

We must give effect to the parties' clear manifestation of intent to conduct the arbitration in accordance with the CIA rules and to be bound by those rules. This court was presented with an analogous question in *Keith Adams &*

*Assocs., Inc. v. Edwards,* 3 Wn. App. 623, 477 P.2d 36 (1970), where we recognized that provisions of RCW 7.04 could be waived when the parties agreed to conform to the bylaws of a local realtors' board which contained procedures for arbitration that differed from certain provisions of our state arbitration statute.

Because the parties have agreed to be bound by the CIA rules, this case is distinguishable from *Marsala v. Valve Corp. of America,* 157 Conn. 362, 254 A.2d 469 (1969), upon which Lent's places reliance. The statute at issue in that case, like our statute, declared that a late award was to have no legal effect unless the parties expressly extended the time for award, and any extension or ratification was required to be in writing. Faced with language clearly making the statute mandatory and spelling out the manner in which the time limits could be modified, the Connecticut Supreme Court rejected the argument that there had been a waiver by conduct of a late award. However, a factor crucial to the result in *Marsala* is noted in this observation by the Connecticut court:

> While the agreement for the arbitration of a dispute may contain special provisions governing the conduct of the arbitration proceedings, in the absence of such special provisions the arbitration proceedings are governed by the applicable provisions of our general arbitration statutes. . . . Neither party makes any claim that the provisions of chapter 909 are not applicable or that the agreement to arbitrate contained any special provisions relevant or material to the present controversy.

*Marsala,* at 365–66. Here, but for the parties' agreement to be bound by the CIA rules of the AAA, we would not reach the issue of waiver, given the clear mandatory language of RCW 7.04.090. However, Lent's may not escape its obligations under the CIA rules.

Turning to those rules, we find that section 41,[2] like

---

[2] "Section 41. Time of Award.—The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties, or specified by law, not later than thirty days from the date of closing the hearings, or if oral hearings

RCW 7.04.090, provides that unless otherwise agreed by the parties, the award is to be made within 30 days from the close of the hearing.[3] However, section 38 of the CIA rules provides that a party may be deemed to have waived the right to object to noncompliance with the rules:

> Waiver of Rules.—Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection thereto in writing, shall be deemed to have waived the right to object.

■ We have no difficulty in concluding that under the CIA rules Lent's waived its right to object to the timeliness of the award. As indicated above, by letter of January 4, 1979, the tribunal administrators informed the parties:

> The award in the above–entitled matter is not ready for release at this time and additional time will be needed to prepare it. Accordingly we ask that you extend the due date for the award until January 15, 1979.
> Please indicate your willingness to grant this extension by signing in the appropriate space below and returning this letter in the enclosed envelope.

In the bottom margin, the letter provided spaces for the parties to indicate whether they would or would not agree to the extension. Santa Fe and Howard agreed to the extension. Lent's neither agreed nor objected to the extension. Neither did Lent's raise the timeliness of the award after it was issued on January 16, 1979. Not until April 9, 1979, did Lent's move in superior court to vacate the award. After clearly stipulating to the applicability of the CIA rules, Lent's may not now evade the obligation imposed by those rules to object once it learned that the

---

have been waived, from the date of transmitting the final statements and proofs to the arbitrator."

[3]Lent's argues that the written extension requirement of the statute must govern because section 41 contains the phrase, "unless otherwise . . . specified by law." However, we reiterate that the time limit in the statute, as well as the requirement of a written extension or ratification, only apply if the parties have not otherwise fixed the time for the award in the arbitration agreement.

original deadline for the award could not be met.

Lent's contends that it did not proceed with arbitration within the meaning of section 38 of the CIA rules because the procedural defect did not occur until after the hearing had closed. Thus, Lent's argues, it did not have an opportunity to object. We disagree. The tribunal administrator's letter clearly indicated that the award would be untimely and gave Lent's an adequate opportunity to object. Lent's failed to take advantage of that opportunity and thus waived its right to object.

> [A] party should not be permitted the luxury of waiting to see whether the arbitrator rules in his favor, and then, if not, claim that the award was invalid in that it was not made in time. Such conduct presents a classic example of waiver.

*Goble v. Central Security Mut. Ins. Co.,* 125 Ill. App. 2d 298, 303, 260 N.E.2d 860, 863 (1970).[4]

Given our holding that Lent's waived its objection to the timeliness of the award, we need not address the remaining issues raised by Santa Fe and Howard.

## LENT'S CROSS APPEAL

Lent's argues that the trial court erred in refusing to vacate the award on the ground that it was clearly erroneous as a matter of law. Lent's points to RCW 7.04.160(4) as providing the trial court with a statutory basis for vacating an erroneous award. That section states:

---

[4]We find further evidence of waiver in the fact that Lent's filed a reply brief, over written objection by Howard, on December 14, 1978, well after the declared close of the hearing. In *Barker v. Government Employees Ins. Co.,* 339 F. Supp. 1064 (D.D.C. 1972), the filing of a late brief was found to be a factor contributing to delay in making an arbitration award. The late brief, in conjunction with the petitioner's failure to object to the arbitrator's expressed intention to issue the award more than 30 days after the close of the hearing, persuaded the court there had been a waiver of the objection.

Santa Fe and Howard argue that the filing of the late brief extended the deadline for the award under section 35 of the CIA rules which states that the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. However, it does not appear that this argument was made to the trial court.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

■ For the court to vacate an award under RCW 7.04.160(4), the award must on its face show the adoption of an erroneous rule or mistake in applying the law. *Moen v. State*, 13 Wn. App. 142, 533 P.2d 862 (1975). The rationale for this standard of review was expressed by the *Moen* court as follows:

> The legislature has also provided, as we have seen, that awards may be set aside for error in fact or law, but inasmuch as there is no provision in the statute requiring arbitrators to file or preserve the evidence received upon the hearing, it would seem to follow that the errors which will sustain an exception to an award on the ground indicated must be discovered by an examination of the award alone. If it was the intention of the legislature to require the court, upon hearing exceptions taken to awards, to examine the evidence submitted to the arbitrators, or, in other words, to try the cause *de novo*, it is but reasonable to presume that they would have so declared. . . . [T]he errors and mistakes contemplated by the statute must appear on the face of the award, or, at least, in some paper delivered with it.

*Moen v. State, supra* at 145 (Quoting *School Dist. 5 v. Sage*, 13 Wash. 352, 356–57, 43 P. 341 (1896)).

Lent's argues that the arbitrator's January 25, 1979, letter should be considered part of the award, or, in the alternative, that the January 12 letter and the "award of arbitration" dated January 16, 1979, together demonstrate a clear error in the application of law.

■ We disagree that the January 25, 1979, letter is part of the award or a paper delivered with the award. Arbitration is intended to be a final resolution of the dispute between parties. To hold that the January 25 letter is part of the award would have the effect of encouraging disappointed parties in attempts to impeach adverse awards. Thus, we would take a step toward "making arbitration the beginning instead of the final determination of controver-

sies, and would create a fruitful source of litigation." *School Dist. 5 v. Sage, supra* at 357.

Moreover, the "award of arbitration" was substantively sufficient on its face to settle the dispute. It was a decision on the merits, it disposed of all the issues raised, and it was clear enough to indicate what each party was entitled to do. *See* M. Domke, *Commercial Arbitration* §§ 28.02–.04 (1968).

Left, then, with the award, and even taking into account the January 12 transmittal letter, we cannot say that the award demonstrates a clear error in the application of law. The paragraph of which Lent's complains[5] is subject to varying interpretations, and is, in any event, of doubtful relevancy to the settlement of the dispute between Santa Fe and its subcontractors. The trial court did not err in concluding that the award was not erroneous as a matter of law.

Reversed in part; affirmed in part; and remanded to Superior Court with instructions to reinstate the award.

CALLOW and CORBETT, JJ., concur.

---

[5]The last paragraph of the arbitrator's January 12 letter, following three numbered paragraphs which we think clearly constitute the "award," states in part:

Upon request of the parties I will submit my reasons for my opinion that the owner (U.S. government) should be responsible for an adjustment in the nature of an extra for the benefit of Lent's, Inc.