211 P.3d 415 (2009)
S & S CONSTRUCTION, INC., a Washington corporation, Appellant,
v.
ADC PROPERTIES LLC, a Washington limited liability company; Himanshu Nigam, an individual; Chan Han, an individual; Community Property of Himanshu Nigam and Zanqetta Nigam; Community Property of Chan Han and Kathy Han; and Does 1-10, Respondents.
No. 37092-1-II.
Court of Appeals of Washington, Division 2.
April 28, 2009.
Publication Ordered July 21, 2009.
*417 Jami K. Elison, Marston Elison PLLC, Redmond, WA, for Appellant.
Rhys Matthew Farren, Davis Wright Tremaine LLP, Bellevue, WA, for Respondent(s).
PENOYAR, A.C.J.
¶ 1 S & S Construction, Inc. (S & S) appeals a superior court order affirming an arbitration award. S & S claims that the award should be vacated because (1) the arbitrator lost authority to make an award beyond the 30-day deadline, (2) the arbitrator failed to disclose important professional relationships, and (3) the award contains facial errors. We agree with the superior court and affirm the award.

FACTS
¶ 2 ADC Properties, LLC, a group of dentists in Puyallup, hired S & S to build a dental clinic. Disagreement arose as to the amount owed to S & S and in May 2006, S & S sued ADC for the alleged remaining amount.
¶ 3 Given the dispute resolution clause in the construction contract, the trial court ordered the parties to engage in mediation and arbitration to resolve their dispute. The dispute resolution clause stated that "arbitration shall be pursuant to the current Construction Industry Arbitration Rules of the American Arbitration Association unless the parties mutually agree otherwise...." Clerk's Papers (CP) at 389. Though the contract called for the parties to file requests for mediation and claims for arbitration with the American Arbitration Association (AAA), the parties deviated from this procedure and mutually selected their own mediators and arbitrators.
¶ 4 ADC's counsel submitted a list of mediators to S & S. Stew Cogan was on the list, and ADC's counsel informed S & S that he had used "Cogan for mediations" in the past. CP at 271. The parties did not select him for the mediation.
¶ 5 The initial planned mediation fell through and S & S's counsel requested that the parties proceed immediately to arbitration. S & S proposed five potential arbitrators, including Stew Cogan. After another unsuccessful mediation attempt in January 2007, the parties agreed on Cogan as an appropriate arbitrator and the case was quickly set for arbitration pursuant to a court order requiring arbitration before March 30, 2007.

I. The Arbitration Process
¶ 6 The arbitration hearing started March 27, 2007, at Davis Wright Tremaine's offices in Bellevue.[1] The hearing lasted three and a half days, concluding with closing arguments on April 5, 2007. Cogan heard testimony from 12 witnesses and considered nearly 150 exhibits (comprising 500-1,000 documents), together with photographic exhibits, video footage, blueprints, schematics, and demonstrative exhibits. At the close of the hearing, both parties requested a "reasoned decision" from Cogan rather than a simple verdict and monetary award. CP at 82.
¶ 7 Cogan was to make his award, per ADC and S & S's contract terms, within 30 days of the conclusion of the arbitration hearing. S & S presented a stipulated order to the trial court on two occasions, May 3, 2007, and June 6, 2007, to allow additional "time for the arbitrator to render an arbitration award." CP at 5, 12. On June 25, 2007, Cogan issued a 20-page memorandum decision *418 that was not an official award but was a detailed document explaining his findings and reasoning on issues presented to him during the arbitration.
¶ 8 On June 29, S & S filed a written objection to the arbitration proceeding alleging that (1) Cogan had lost authority to issue an award because it was not filed within 30 days of the end of the hearing, and (2) Cogan failed to disclose the extent of his relationship with ADC's counsel "until the conclusion of the hearing." CP at 139. S & S made other objections between June 29 and September 28, 2007, the date Cogan submitted his final arbitration award. Cogan responded to each of S & S's objections, overruling them and declining to withdraw as the arbitrator.
¶ 9 On October 26, 2007, S & S filed a motion to vacate the arbitration award with the superior court. S & S argued that the award should be vacated because (1) Cogan did not make the award within the 30-day deadline, (2) Cogan failed to make "reasonable disclosures regarding his relationship to parties and counsel for represented parties," and (3) the award contained facial errors. CP at 66. After oral argument and reviewing numerous declarations, the trial court denied S & S's motion to vacate the award. This appeal follows.

II. Disclosures Made by Cogan
¶ 10 It is undisputed that Cogan started the arbitration hearing by informing those present that he had served as a mediator for ADC's counsel in the past, he had not worked with S & S's counsel before, and he had worked for the predecessor law firm to Davis Wright Tremaine many years earlier. S & S did not question or object to this information but, instead, proceeded with the arbitration.
¶ 11 S & S maintains that it did not know of Cogan's prior affiliation with Davis Wright Tremaine until the first day of the hearing. Further, S & S argues that it did not learn that Cogan also previously served as an arbitrator for ADC's counsel until the close of the arbitration hearing. S & S also claims that it was not made aware that Cogan had served as a mediator for a case involving Dr. Han, one of the two principal owners of ADC, until July 31, 2007.
¶ 12 S & S's recollection of events is different from ADC's. Counsel for ADC and Dr. Han both recalled Cogan disclosing his earlier mediation and arbitration experience with ADC's counsel at the start of the hearing. Further, both Dr. Han and ADC's counsel recalled Cogan disclosing his prior mediation with Dr. Han, before the hearing began.[2] Cogan had difficulty recalling exactly what he disclosed at the start of the hearing, but he believed "that disclosures were made of [his] prior employment by Davis Wright and [his] prior mediation and arbitration experience with [ADC's counsel]...."[3] CP at 311.
¶ 13 As to whether he had disclosed his previous mediation with Dr. Han, Cogan did "not have a specific recollection" of making the disclosure. CP at 311. Cogan did say that he recalled seeing Dr. Han, recognizing him, and exchanging pleasantries. Cogan believed that this encounter, in the arbitration room, "certainly could have prompted me to refer to the prior mediation during the course of [] disclosures...."[4] CP at 311. It is undisputed that all parties were made aware of Cogan's prior mediation with Dr. Han during a telephone conference on July *419 31, 2007, when Cogan raised the issue sua sponte.
¶ 14 In reviewing the motion to vacate the arbitration award on grounds that Cogan's disclosures were insufficient, the trial court disagreed, but it did not make specific findings or conclusions of law. At oral argument on the motion, the trial court made no comment on this issue beyond stating: "All right. Even considering the federal language, I am going to confirm the arbitration award." Report of Proceedings (RP) (11/9/07) at 29.

ANALYSIS

I. Arbitrator's Authority
¶ 15 Washington public policy strongly favors finality of arbitration awards. Davidson v. Hensen, 135 Wash.2d 112, 118, 954 P.2d 1327 (1998). Judicial review of arbitration awards is strictly limited to the grounds set forth by the Washington Uniform Arbitration Act, RCW 7.04A. Similarly, appellate review of arbitration proceedings is restricted to grounds identified in the Act. Barnett v. Hicks, 119 Wash.2d 151, 829 P.2d 1087 (1992). An appellate court limits review of an arbitrator's award to that of the court that confirmed, vacated, modified, or corrected that award. Pegasus Constr. Corp. v. Turner Constr. Co., 84 Wash.App. 744, 747, 929 P.2d 1200 (1997) (quoting Barnett, 119 Wash.2d at 157, 829 P.2d 1087).
¶ 16 S & S argues that relief from the arbitration judgment is warranted under RCW 7.04A.230(1)(d) because the arbitrator acted without authority.[5] Specifically, S & S argues that the arbitrator lost his authority by failing to make an award in the 30 days specified in the contract.[6] ADC responds that because S & S failed to object to the arbitrator's delay in announcing an award, it waived its claim.
¶ 17 S & S cites AAA Construction Industry Arbitration Rules, R-42, (AAA-CIA R-42), for the 30-day timeline:
The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.
¶ 18 Stressing that the arbitrator failed to make his award within this timeline, S & S argues that the award is null and void.[7] As ADC notes however, S & S fails to take note other applicable provisions of the AAA rules. Notably, AAA-CIA R-38 states that:
Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.
¶ 19 To preserve an objection, Rule 38 requires a party to file a written objection with the arbitrator. If a party "proceeds with the arbitration" without filing a written objection to the alleged violation, then the complaining party waives any future objection on the matter.
¶ 20 Here, the arbitration hearing ended April 5, 2007. The arbitrator, under agreed guidelines, should have produced an award 30 days from that date. Before the elapse of those 30 days, however, the parties agreed to extend the arbitrator's deadline to June 6, 2007. The parties agreed, again, on June 6 to provide the arbitrator with even more time, giving him until July 26, 2007, to render *420 his opinion. Both parties permitted the original 30-day deadline to pass without formal written objection, as Rule 38 required.[8] Under the AAA-CIA rules, because S & S allowed the arbitration process to proceed without filing a written objection, they cannot now argue the issue.
¶ 21 S & S relies on Lent's, Inc. v. Santa Fe Engineers, Inc., to argue that the arbitrator had an affirmative obligation to contact the parties at the expiration of the 30-day deadline and seek an extension for filing the award. 29 Wash.App. 257, 262-63, 628 P.2d 488 (1981). In that case, however, the court did not hold that the arbitrator had an affirmative obligation to contact the parties but, rather, that by remaining silent and proceeding with the arbitration beyond the 30-day timeline, the complaining party waived its right to object as to the timeliness of the award. Lent's, Inc., 29 Wash.App. at 263-64, 628 P.2d 488. Whether the arbitrator sent a letter or not, S & S knew that the 30-day deadline was set to pass and, instead of filing a written objection in accordance with the AAA-CIA, it agreed, twice, to give the arbitrator more time to reach a decision. By agreeing to the extensions, S & S clearly "proceeded" with the arbitration, as described by rule 38 of the AAA-CIA, and waived its right to object. The 30-day rule cannot be viewed in isolation from the rest of the AAA-CIA regulations. Because S & S proceeded with the arbitration beyond the 30-day deadline without filing a written objection with the arbitrator, we do not review the claim further.

II. Conflict of Interest
¶ 22 Statutory grounds for vacation of an arbitrator's award include RCW 7.04A.230(1)(b)(i), "[e]vident partiality by an arbitrator appointed as a neutral." S & S ignores this statutory standard, and accompanying case law, and instead appears to argue that AAA-CIA rules on impartiality take precedence on this issue. S & S provides no law or argument as to why AAA-CIA rules should trump RCW 7.04A.230(1)(b)(i). Further, S & S cites no authority interpreting the AAA-CIA rules; instead, S & S makes a simple assertion that the facts of this case are sufficient to support a presumption of partiality.[9] Because S & S provides no reason why we should review AAA-CIA rules over those the legislature created, we will review this claim under RCW 7.04A.230(1)(b)(i) and accompanying case law.[10]

A. Timeliness of Claim
¶ 23 A party challenging the impartiality of an arbitrator must do so in a timely manner, i.e., upon learning of any basis of partiality and before the arbitrator makes a decision. RCW 7.04A.120(4) ("[i]f the arbitrator did not disclose a fact as required by subsection *421 (1) or (2) ... upon timely objection of a party, an award may be vacated ..."); Hanson v. Shim, 87 Wash.App. 538, 548, 943 P.2d 322 (1997) (Under former chapter 7.04 RCW, a party who knows of potential conflict, even when that conflict is disclosed during arbitration, cannot wait to see whether the award is favorable to him before raising a challenge that he was aware of before he made the award.).
¶ 24 Regardless of when Cogan made disclosures, most of S & S's claim is untimely. S & S did not question Cogan after he initially made disclosures at the arbitration hearing, nor did it note any objection at that time. Instead, S & S voiced their concern only after Cogan sent a 20-page letter of decision to both parties substantially finding against S & S. Though Cogan stated that the letter was "not an award, nor [did] it form any portion of the award" he eventually made, it provided more than sufficient detail for the parties to know what his award would be.[11] As noted in Hanson, "[a challenger of the award] cannot wait to see whether the award is favorable before raising a challenge [to the arbitration] that it was aware of before the award was entered." 87 Wash.App. at 548, 943 P.2d 322; See also, Goble v. Cent. Sec. Mut. Ins. Co., 125 Ill.App.2d 298, 260 N.E.2d 860, 863 (1970). The exact timing of most disclosures is not important where the disclosures were made before Cogan's decision and S & S's subsequent objection. We deny most of S & S's claim because its objection is untimely. We discuss the timing of Cogan's disclosure of his prior mediation with Dr. Han in section B, below, as it is disputed.

B. No Actual Conflict
¶ 25 RCW 7.04A.230(1)(b)(i) provides: "the court shall vacate an award if: (b) There was [ ](1) Evident partiality by an arbitrator appointed as a neutral." Established case law holds that under this statute, an arbitrator has a general duty to disclose a circumstance or relationship that bears on the question of impartiality where that relationship or circumstance creates a reasonable inference of the presence of bias or the absence of impartiality. Hanson, 87 Wash. App. at 547, 943 P.2d 322. When such an inference exists, the complaining party must show the existence of prejudice from the nondisclosure. Hanson, 87 Wash.App. at 547, 943 P.2d 322.
¶ 26 S & S argues that "[j]ustifiable doubt" as to partiality exists because Cogan was "formerly an attorney with the same law firm representing [ADC]," previously served as an arbitrator for ADC's counsel, and previously served as mediator for one of ADC's principal members. Appellant's Br. at 18. Though S & S makes this claim, it offers no case law supporting its assertions nor does it show prejudice resulting from those relationships.
¶ 27 Cogan's relationship with Davis Wright Tremaine is far too remote, and commonplace, to be considered a conflict. Cogan worked for Davis Wright Tremaine's predecessor law firm, Davis Wright Todd Reise & Jones from approximately June 1976 through September 1978, and again from approximately April 1979 through September 1981. More than 25 years elapsed between Cogan's employment with the firm, and this arbitration. This connection, which Cogan disclosed to both parties, is clearly inadequate to prove, or infer, impropriety on Cogan's behalf.[12]See Hanson, 87 Wash.App. at 542, 943 P.2d 322 (court held that arbitrator's undisclosed prior employmentonly two yearswith same firm representing one of the parties, twenty years past, was not grounds for vacation of arbitration award).
¶ 28 Past involvement with ADC's counsel as an arbitrator or mediator by Cogan is also insufficient to cast justifiable doubt on Cogan's impartiality. If an arbitrator could be considered partial for arbitrating with a particular attorney more than once, then the alternative dispute resolution process would *422 lose its most experienced arbitrators.[13] S & S had knowledge of Cogan's prior work as a mediator for ADC's counsel before the arbitration, and S & S gained knowledge of Cogan's work as an arbitrator (at the latest) during the arbitration hearing. Cogan did not attempt to conceal his past work history with ADC's counsel, as Cogan specifically recalled disclosing "[his] prior mediation and arbitration experience with [ADC's counsel]." CP at 528. S & S had every opportunity to investigate that past relationship or formally object, but it did neither. Without showing something more than a past professional relationship, we deny S & S's appeal on this basis.[14]
¶ 29 As for Cogan's involvement as a mediator for an unrelated case involving Dr. Han, it is unclear when S & S became aware of this.[15] Dr. Han and ADC's counsel recall Cogan mentioning it at the start of the arbitration hearing, when Cogan first recognized and exchanged pleasantries with Han. Cogan recalled that though seeing and recognizing Dr. Han could have prompted a disclosure, he could not honestly say whether he "did or did not make such a disclosure." CP at 181. Cogan did, however, affirmatively make the disclosure, sua sponte, in a conference call with both parties on July 31, 2007, several days after he mailed his letter of decision. Even assuming S & S was not aware of this relationship until after Cogan's letter of decision, we are not automatically required to vacate the award.
¶ 30 St. Paul Ins. Co. v. Lusis, addressed the issue of disclosure after the arbitration award had been made. 6 Wash.App. 205, 492 P.2d 575 (1971). Lusis demonstrates that Washington courts have rejected the adoption of a full disclosure requirement. Perez v. Mid-Century Ins. Co., 85 Wash.App. 760, 767, 934 P.2d 731 (1997). The Lusis court concluded that not every relationship was disclosable and found a general duty to disclose a relationship or circumstance where it was reasonable to infer the presence of bias or absence of impartiality. 6 Wash.App. at 213-14, 492 P.2d 575. Inference of bias however, is not enough to vacate the award.[16] As previously noted in Hanson, "even when [an inference of bias] exists, the party seeking vacation must still show prejudice from the nondisclosure." 87 Wash.App. at 547, 943 P.2d 322. S & S fails to do this. The argument portion of S & S's brief does not contain a single reference to how the alleged nondisclosure may have prejudiced it. Instead, S & S flatly asserts that Cogan "should be presumed partial for" the alleged failure to disclose his prior mediation with Dr. Han. Appellant's Br. At 18. Even assuming the inference of bias or impartiality (which we do not), S & S does not demonstrate how this failure to disclose harmed them. Barring some showing of possible or actual prejudice, we decline to vacate the arbitration award on this basis.

*423 III. Award Does Not Contain Facial Errors
¶ 31 S & S argues that we should vacate the arbitration award as it contains facial errors. ADC disagrees, as do we.
¶ 32 Generally, we do not review alleged substantive errors in an arbitration award. Davidson, 135 Wash.2d at 119, 954 P.2d 1327 (reviewing court cannot generally address the underlying merits of an arbitration award). "In the absence of an error of law on the face of the award, the arbitrator's award will not be vacated or modified." Davidson, 135 Wash.2d at 118, 954 P.2d 1327 (citing Boyd v. Davis, 127 Wash.2d 256, 263, 897 P.2d 1239 (1995)). S & S asks us to review contract language and make conclusions in opposition to those the arbitrator made. Given that "judicial review of an arbitration award ... does not include a review of the merits of the case," we will not conduct one here. Davidson, 135 Wash.2d at 119, 954 P.2d 1327 (citing Barnett, 119 Wash.2d at 157, 829 P.2d 1087). The award does not appear to contain any facial errors, and so we affirm the award.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] Davis Wright Tremaine represents ADC in this matter.
[2] The previous mediation Cogan conducted with Dr. Han as a party dealt with a dissolution of corporate interests in several dental practices in Everett and Edmonds, Washington. The mediation did not last a whole day and the case did not settle. The case had nothing to do with the ADC practice located in Puyallup, Washington. Dr. Han recalls that "in the course of the partial day in mediation, we never even mentioned the ADC dental clinic ... or anything surrounding the construction of that clinic." CP at 241.
[3] Likewise, both ADC's counsel and Cogan recalled similar disclosures being made at the first telephone conference between the parties. Neither can remember an exact date nor find written confirmation of those disclosures, however.
[4] In responding to S & S's objection, Cogan went on to note that "[f]rom [his] review of the [submitted declarations], it is possible, if not probable, that prior to the commencement of the arbitration [he] disclosed the prior mediation with Dr. Han." CP at 311.
[5] RCW 7.04A.230(1)(d) states:

(1) Upon motion of a party to the arbitration proceeding, the court shall vacate an award if:
....
(d) An arbitrator exceeded the arbitrator's powers.
[6] The contract states:

Binding Arbitration shall be pursuant to the current Construction Industry Arbitration Rules of the American Arbitration Association unless the parties mutually agree otherwise....
CP at 389.
[7] S & S argues that this 30-day rule is "critical to preserving the likelihood that a decision will be made when credibility and weight of evidence determinations are reasonably fresh in the arbitrator's mind," however it cites no legal authority describing how or why this rule is important. Appellant's Br. at 16.
[8] S & S mentions several times in its briefing that it objected to the delay in the arbitrator's award many times before putting it in writing, but S & S cannot cite to the record to support this claim. Appellant's Reply Br. at 11 ("Respondent attempts to argue waiver by implication, but that argument fails in light of Appellant's express and open act of recording ongoing objections to the arbitrator's authority. [No Cite].")
[9] We could refuse to hear this claim under RAP 10.3(a)(6) because S & S fails to support its argument with citations to legal authority. S & S's analysis on this argument does not contain a single case cite, nor references any legal authority. See Am. Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991) ("In the absence of argument and citation to authority, an issue raised on appeal will not be considered."); Holland v. City of Tacoma, 90 Wash.App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned arguments is insufficient to merit judicial consideration.").
[10] In fact in a similar case, where parties attempted to use AAA provisions over the statute, the court focused on statutory standards and various case law over following the AAA provisions to the letter. The court in St. Paul Ins. Co. v. Lusis, 6 Wash.App. 205, 209, 492 P.2d 575 (1971), held:

Obviously, we are not at this point concerned with whether or not [the arbitrator] complied with each and every admonitory declaration or unofficial pronouncement of the AAA or whether or not [the arbitrator's] interpretation of such admonitions or pronouncements coincides with the interpretation placed upon them by any official of the AAA itself. Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17 (2nd Cir.1962). Rather, we are concerned with whether or not the [challenged] relationship ... was a necessarily disclosable relationship.
[11] Cogan went through each claim made by both parties and discussed his decision and reasoning for each.
[12] Further, Cogan's employment with the firm did not overlap with ADC's counsel; they never worked together.
[13] As one court has observed: "The most sought-after arbitrators are those who are prominent and experienced ... Since they are chosen precisely because of [this], some degree of overlapping representation and interest inevitably results.... Under these circumstances, a decision on our part to vacate arbitration awards whenever a mere appearance of bias can be made out would seriously disrupt the salutary process of settling ... disputes through arbitration. We are convinced that the goals of the arbitration system would not be served if arbitrators and Article III judges were held to the same high standard. To vacate an arbitration award where nothing more than an appearance of bias is alleged would be `automatically to disqualify the best informed and most capable potential arbitrators.'" Int'l Produce, Inc. v. A/S Rosshavet, 638 F.2d 548, 552 (2nd Cir.1981) (quoting Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 150, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (White, J., concurring)).
[14] ADC's counsel notes in his declaration to the trial court that a search of his records from the past 17 years revealed that Cogan had served as an arbitrator for him only once, 6 years before this arbitration.
[15] ADC's counsel notes that Dr. Han and Cogan did not have a business relationship, "but merely a single mediation session on a single issue involving facts completely unrelated to the issues" in this arbitration. CP at 320.
[16] The statute does not require that we vacate an award where the arbitrator failed to make a disclosure. RCW 7.04A.120 (4) provides that if the arbitrator fails to disclose "known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator ... in the proceeding," then the award may be vacated under RCW 7.04A.230(1)(b).