## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID W. NEWELL, M.D., an individual, | ) ) ) | No. 77659-2-I |
| Respondent, | ) ) ) | |
| v. | ) ) | DIVISION ONE |
| PROVIDENCE HEALTH & SERVICES, a Washington non-profit corporation, and SWEDISH HEALTH SERVICES, a Washington non-profit corporation, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION<br><br>FILED: June 24, 2019 |
| Appellants. | ) ) ) | |

MANN, A.C.J. — After Providence Health & Services and Swedish Health Services (collectively Swedish) terminated Dr. David Newell, Newell sued Swedish alleging, among other things, breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the Washington Consumer Protection Act (CPA),[1] and violations of the Washington Law Against Discrimination (WLAD).[2] Pursuant to the parties' employment contract, the dispute was sent to arbitration. The arbitrator found in

---

[1] Ch. 19.86 RCW.
[2] Ch. 49.60 RCW.

Newell's favor and awarded Newell damages and attorney fees and costs. Swedish petitioned the superior court to vacate or modify the awards. The court denied Swedish's motion to vacate and confirmed the awards. Swedish appeals. We affirm.

I.

From 2012 through 2016, Newell worked as a physician and neurosurgeon with Swedish. His employment was governed by the Swedish Health Services Physician Employment Agreement (employment agreement), which required Newell to notify Swedish "of the initiation, occurrence, or existence of . . . [a]ny criminal investigation of [Newell]." On July 11, 2016, Newell was arrested for soliciting prostitution. Newell ultimately pleaded guilty to that charge, but did not notify Swedish of his arrest. On September 20, 2016, Swedish terminated Newell allegedly due to his failure to inform Swedish that he was under criminal investigation. Newell believed, however, that Swedish actually fired him as retaliation for complaints that he had made against Dr. Delashaw, the chairman of Swedish's Neuroscience Institute.

Newell sued Swedish alleging breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful termination in violation of public policy, tortious interference with contact and business expectancy, violation of the CPA, and violation of the WLAD. Pursuant to the parties' employment contract, the dispute was sent to arbitration.

The parties agreed to use the Honorable Paris Kallas, retired, (arbitrator) to arbitrate Newell's claims. Following a three-day hearing, the arbitrator issued her written arbitration award. The decision stated "[h]aving reviewed the evidence, testimony presented at the hearing, and counsels' argument, I find in favor of [Newell]

on the following causes of action: breach of contract; breach of implied covenant of good faith and fair dealing; and retaliation in violation of WLAD." The arbitrator awarded Newell $16,500,000 lost earning and $1,000,000 emotional distress damages. The arbitrator also awarded Newell his attorney fees, costs, and expenses for his WLAD claims, which was later determined to be $685,178.84, including a 1.75 fee multiplier.

Newell petitioned the superior court to confirm both the initial arbitration award, and the supplemental attorney fee award. Swedish contested both motions and petitioned the court to vacate or in the alternative modify the awards. The superior court denied Swedish's motions and confirmed both the initial and supplemental awards.

Swedish appeals.

II.

"[A]rbitration in Washington State is governed exclusively by statute." Broom v. Morgan Stanley DW Inc., 169 Wn.2d 231, 237, 236 P.3d 182 (2010). Washington courts accord substantial finality to the decision of an arbitrator, and therefore judicial review of an arbitration award is exceedingly limited. See Davidson v. Hensen, 135 Wn.2d 112, 118-19, 954 P.2d 1327 (1998). "[I]n the case of an appeal from an arbitrator's award, an appellate court is strictly proscribed from the traditional full review." Barnett v. Hicks, 119 Wn.2d 151, 157, 829 P.2d 1087 (1992). Our "review of an arbitrator's award is limited to that of the court which confirmed . . . that award. The trial court's review is confined to the question whether any of the statutory grounds for vacation exist." Cummings v. Budget Tank Removal and Envtl. Servs. LLC., 163 Wn. App. 379, 388, 260 P.3d 220 (2011).

The Uniform Arbitration Act (UAA), chapter 7.04A RCW, provides the statutory grounds necessary to vacate an arbitration award: "the court shall vacate an award if . . . [a]n arbitrator exceeded the arbitrator's powers." RCW 7.04A.230(1)(d).[3] But when reviewing such a claim, we are restricted to reviewing only the face of the award. Boyd v. Davis, 127 Wn.2d 256, 262-63, 897 P.2d 1239 (1995).

We can vacate an arbitration award only if "the face of the arbitral award alone . . . exhibit[s] an erroneous rule of law or a mistaken application of law." Boyd, 127 Wn.2d at 263. "[T]he facial legal error standard is a very narrow ground for vacating an arbitral award . . . courts may not search the arbitral proceedings for any legal error; courts do not look to the merits of the case, and they do not reexamine the evidence." Broom, 169 Wn.2d at 239. "The error should be recognizable from the language of the award, as, for instance, where the arbitrator identifies a portion of the award as punitive damages in a jurisdiction that does not allow punitive damages." Federated Servs. Ins. Co. v. Estate of Norberg, 101 Wn. App. 119, 124, 4 P.3d 844 (2000).

_____

[3] RCW 7.04A.230(1) provides:
Upon motion of a party to the arbitration proceeding, the court shall vacate an award if:
    (a) The award was procured by corruption, fraud, or other undue means;
    (b) There was:
    (i) Evident partiality by an arbitrator appointed as a neutral;
    (ii) Corruption by an arbitrator; or
    (iii) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
    (c) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to RCW 7.04A.150, so as to prejudice substantially the rights of a party to the arbitration proceeding;
    (d) An arbitrator exceeded the arbitrator's powers;
    (e) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under RCW 7.04A.150(3) not later than the commencement of the arbitration hearing; or
    (f) The arbitration was conducted without proper notice of the initiation of an arbitration as required in RCW 7.04A.090 so as to prejudice substantially the rights of a party to the arbitration proceeding.

III.

Swedish argues first that the arbitrator ignored the requirements in the employment contract. Washington's arbitration statute requires the court to vacate an award if the arbitrator "exceeded the arbitrator's power." RCW 7.04A.230(1)(d). "The authority of the arbitration tribunal derives from the contract of the parties," and the arbitrator can "do no more than that authorized by the contract." Agnew v. Lacey Co-Ply, 33 Wn. App. 283, 287, 654 P.2d 712 (1982). As a result, when an arbitrator departs from the unambiguous language of the parties' arbitration agreement, the arbitrator exceeds their powers. Kennewick Educ. Ass'n v. Kennewick Sch. Dist. No. 17, 35 Wn. App. 280, 282, 666 P.2d 928 (1983).

Here, the contract between Newell and Swedish provides that the arbitration award "shall contain a brief statement of the claim(s) determined and the award made on each claim." The arbitrator's decision found "in favor of [Newell] on the following causes of action: breach of contract; breach of implied covenant of good faith and fair dealing; and retaliation in violation of WLAD." Swedish argues that because the form of the award did not comply with the employment agreement, the arbitrator exceeded her authority. Further, Swedish asserts that the award was impenetrable and frustrates justice because it prevents Swedish from assessing whether the arbitrator misapplied the law. We disagree.

First, Swedish invited the error it now complains of on appeal. "The invited error doctrine prohibits a party from setting up an error below and then complaining of it on appeal." In re Marriage of Morris, 176 Wn. App. 893, 900, 309 P.3d 767 (2013). Prior to the hearing, Swedish submitted a proposed award which laid out each cause of

action and, without any reasoning, found in favor of Swedish. For example, Swedish's proposed award provided: "On the First Cause of Action, 'Breach of Contract,' I rule in favor of the Respondents." Then "[a]t the arbitration hearing, counsel for Dr. Newell and [Swedish] represented that the parties agreed that only the briefest of 'a brief statement' was requested and required under the Employment Agreement."

Swedish's proposed award, in conjunction with the parties' oral agreement indicated to the arbitrator that the form of her award complied with the employment agreement. Therefore the invited error doctrine prohibits Swedish from now arguing that the form of the award is in error.

Swedish disagrees with this result and argues that it could not have agreed to a brief, summarized award because doing so violated the underlying employment contract. But the intent of the parties' agreement is not properly before us. In Boyd, our Supreme Court analyzed whether the trial court erred by examining "the agreements entered into by the parties in the course of determining whether the arbitrator exceeded the scope of his power." 127 Wn.2d at 258. "[T]he trial court [had] reviewed the . . . agreements specifically for the purpose of discerning [the parties'] intent. In effect, therefore, it interpreted those agreements." Boyd, 127 Wn.2d at 261. But because the "court cannot search the four corners of the contract to discern the parties' intent," Boyd, 127 Wn.2d at 263, the Supreme Court ruled the trial court had erred in examining the underlying contract. "Such an undertaking [was] tantamount to trying the case de novo." Boyd, 127 Wn.2d at 262.

Swedish is asking this court to conclude that it did not agree to the form of the arbitrator's award because agreeing to an unexplained award would have violated the

employment agreement. But because only the arbitrator is entitled to interpret the employment agreement, we are unable to review the validity of the parties' concessions below and must take the arbitrator's findings as consistent with the employment agreement. Boyd, 127 Wn.2d at 262.

Second, we cannot vacate an award based on a perceived error in the form of the award. Our ability to vacate an award is limited to the grounds present in RCW 7.04A.230, which does not include an improper form of the award. "In the absence of an error of law on the face of the award, the arbitrator's award will not be vacated or modified." Davidson, 135 Wn.2d at 118.

Instead, perceived errors in the form of the award are addressed in RCW 7.04A.240, which provides only that "the [superior] court shall modify or correct the award if . . . the award is imperfect in a matter of form not affecting the merits of the decision." RCW 7.04A.240(c). See RCW 7.04A.010(4) ("'Court' means a court of competent jurisdiction in this state."); Dayton v. Farmers Ins. Grp., 124 Wn.2d 277, 279, 876 P.2d 896 (1994) (emphasis added) ("The superior court may either confirm, vacate, modify, or correct an arbitration award for the specific reasons set for in [the UAA.]"). Swedish failed to ask the arbitrator to modify the arbitration award, see RCW 7.04A.200, and the superior court refused to do so. We are without the statutory authority to modify the award based on Swedish's perceived error in form.

Finally, the face of the arbitration award does not exhibit an erroneous rule of law or mistaken application of law. The only argument Swedish makes resembling an attack against the face of the award is that the $1,000,000 emotional distress damages

-7-

could not have been awarded under Newell's contract claims.[4] But because the WLAD allows such a recovery of emotional distress damages, the arbitrator did not misapply the law. <u>Gaglidari v. Denny's Rests., Inc.</u>, 117 Wn.2d 426, 448, 815 P.2d 1362 (1991); <u>Lords v. N. Auto. Corp.</u>, 75 Wn. App. 589, 596, 881 P.2d 256 (1994).

IV.

Swedish argues next that the arbitrator's evidentiary and discovery rulings prejudiced Swedish's rights and revealed the arbitrator's partiality compelling us to vacate the award. The UAA provides that an arbitration award shall be vacated if the arbitrator "refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to RCW 7.04A.150, so as to prejudice substantially the rights of the party to the arbitration proceeding." RCW 7.04A.230(1)(c). Washington courts have not defined the standard for vacating an award under RCW 7.04A.230(1)(c). In <u>Kempf v. Puryear</u>, 87 Wn. App. 390, 393 942 P.2d 375 (1997), the court affirmed an arbitrator's decision against a challenge under the analogous predecessor statute, RCW 7.04.160(3).[5] The <u>Kempf</u> court held that vacatur is warranted only where the movant "was denied <u>any</u> opportunity to participate in the arbitration." <u>Kempf</u> appears consistent with federal authority construing the Federal Arbitration Act's (FAA) analogous provision. <u>Compare</u> 9 U.S.C. § 10(a)(3) <u>with</u> RCW

---

[4] Additionally, Swedish argues against a 12 percent post-judgment interest rate and against $16.5 million in lost earning damages. But these arguments ask us to review the merits of the case, which we are forbidden from doing. <u>See</u> <u>Davidson</u>, 135 Wn.2d at 119 ("Judicial review of an arbitration award, therefore, does not include a review of the merits of the case. Ordinarily, the evidence before the arbitrator will not be considered by the court."). <u>See also</u> <u>Cummings</u>, 163 Wn. App. at 391 ("[I]n reviewing an arbitration award, a court does not insist upon or even look for a comprehensive explanation of the arbitrator's reasoning. Findings of fact and conclusions of law need not be stated.").

[5] Former RCW 7.04.160(3) (1943) provided that an arbitrator's award should be vacated where the arbitrator was guilty of misconduct including "in refusing to hear evidence, pertinent and material to the controversy, . . . by which the rights of any party have been prejudiced."

7.04A.230(1)(c).[6] Like Kempf, federal authority limits the grounds for vacatur and applies it in situations where only "parties are denied the opportunity to present any evidence, oral or written." Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 621 (S.D.N.Y. 2011).

Here, the employment agreement between Swedish and Newell provides insight into the proper standard of review for this case. The employment agreement provides that

> there shall be no discovery . . . but the arbitrator may authorize such discovery as is necessary for a fair hearing. . . . The arbitrator shall not be bound by the rules of evidence or of civil procedure but rather may consider such evidence as reasonable business people would consider in the conduct of their day-to-day affairs . . . .[T]he arbitrator shall limit live testimony and cross-examination . . . to the extent he/she determines that can be done without jeopardizing a fair hearing of the dispute.

Therefore, we will not vacate the arbitration award unless we find that the arbitration hearing was fundamentally unfair.[7]

## A.

Swedish argues that the arbitrator improperly limited its ability to cross-examine Newell on two different topics: Newell's illicit behaviors prior to termination and Newell's conversations with his criminal defense attorney.

Swedish's theory of defense was that Newell's alleged emotional distress was really due to his personal life and not his termination. In an effort to explore this theory,

---

[6] This court "may look to federal authority construing [that] analogous provision . . . for guidance." Jensen v. Misner, 1 Wn. App. 2d 835, 843, 407 P.3d 1183 (2017).

[7] See also Century Indem. Co. v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 557-58 (2009) ("[I]n making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts . . . rather, an arbitrator need only grant the parties a fundamentally fair hearing.").

Swedish attempted to ask Newell about his use of Backpage.com.[8] Clerk's Pages (CP) at 92-3. The arbitrator limited this line of questioning as irrelevant: "with the limited discovery, with the objection at the discovery deposition, I'm not sure there's any basis to ask it." CP at 93. Swedish now argues that this was in error because "as a result, neither Swedish nor the arbitrator was able to learn how often Dr. Newell used the web to search out sexual liaisons or frequented prostitutes." Br. of Appellant at 22.

But the frequency with which Newell engaged in illicit sexual activities is not related to any of his claims and therefore is not relevant. Therefore, especially because Swedish was able to introduce other evidence on Newell's behavior, the arbitrator's refusal to allow Swedish to question Newell did not create an unfair hearing. See, e.g. CP at 52-68 (testimony from Newell's arresting office, Detective Gill); CP at 103-38 (Police report of Newell's arrest); CP at 133 (Newell's guilty plea).

B.

Swedish also asserts that the arbitrator allowed Newell to use his attorney client privilege with his criminal defense attorney as both a sword and a shield. On direct examination, Newell testified that he did not inform Swedish of his arrest based on instructions he received from his attorney. On-cross examination, Swedish asked: "What exactly did you ask [your attorney] when you met with him[,]" but the arbitrator did not allow Swedish to proceed with this line of questioning.

---

[8] A website where patrons can go to view advertisements and arrange services from prostitutes. See, e.g., J.S. v. Village Voice Media Holdings, L.L.C., 184 Wn.2d 95, 98, 359 P.3d 714 (2015) (a negligence action brought by sexual assault victims against Backpage.com showing how they were "bought and sold for sexual services online on Backpage.com in advertisements that, [the victims] allege[d], the defendants help[ed] develop.").

Swedish asserts that Newell waived his attorney client privilege on direct examination, which should have allowed Swedish to cross-examine Newell about this conversation. But, even if Newell's statement would have waived his attorney client privilege in a court of law, according to the employment agreement the rules of civil procedure and evidence did not apply to the arbitration hearing. Therefore, the arbitrator was not required to rely on the precise legal requirements of attorney client privilege.

In a similar case, the United States Court of Appeals for the District of Columbia Circuit held that the arbitrator's exclusion of testimony did not warrant vacation of the arbitrator's award. Howard U. v. Metro. Campus Police Officers Union, 512 F.3d 716, 721 (2008). The Federal Arbitration Act "provides a federal court may set aside an arbitration award when 'the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy.'" Howard, 512 F.3d at 721 (citing 9 U.S.C. § 10(a)(3)). There, the court determined that the "arbitrator was not bound by the particulars of federal law governing attorney-client privilege." Howard, 512 F.3d at 722. Because of that, the court concluded there was no misconduct when the arbitrator excluded testimony about statements made in open negotiation, despite the fact that such testimony ordinarily would not be privileged. "The question is not whether the arbitrator correctly applied federal law; the question is whether her decision . . . amounted to 'misconduct.' Plainly it did not." Howard, 512 F.3d at 722.

Similarly here, the arbitrator's refusal to let Swedish inquire about the precise communications between Newell and his criminal defense attorney was not in error. While in a court of law the communications Swedish sought may no longer have been

privileged, the same is not necessarily true in the context of an arbitration. Instead, the arbitrator was tasked with ensuring that the hearing was fair to all parties while limiting live testimony and cross-examination to the extent possible. Here, the arbitrator did precisely that by determining that the details of a conversation between Newell and his attorney was not a proper subject for cross-examination. Since Newell admitted that he never informed Swedish of his arrest, the arbitrator's decision did not create a fundamentally unfair hearing.

C.

Swedish next contends that the arbitrator improperly prevented it from discovering Newell's medical records. Swedish asserts that because Newell was claiming emotional distress damages, it was entitled to discover his entire medical records to determine if the alleged emotional distress could have been due to factors other than Newell's termination. The arbitrator determined that "Swedish's request for 'complete copies' of Dr. Newell's medical records is denied. Dr. Newell has testified that he has not seen a health care provider about his alleged emotional distress. Given this testimony, producing the records is not necessary for a fair hearing."

The arbitrator's decision to prevent discovery of Newell's medical records was not in error. Swedish asserted that it required Newell's complete medical records because Newell voluntarily put his mental health at issue.[9] But the scope of discovery was already decided by the parties in the employment agreement: "there shall be no discovery . . . [except] as is necessary for a fair hearing of the dispute." (Emphasis

---

[9] Swedish cites Lodis v. Cobris Holdings, Inc., 172 Wn. App. 835, 855, 292 P.3d 779 (2013), for this proposition. But Lodis is not an arbitration case and what may be relevant and required disclosures in a court of law is not necessarily required in an arbitration proceeding, especially where, as here, the employment contract calls for significantly limited discovery.

-12-

added). Therefore, according to the employment agreement, the parties agreed that by default discovery would be substantially limited.

In Agnew, this court reversed the trial court's order confirming an arbitration award. 33 Wn. App. at 290. There, the arbitrator refused to award the prevailing party its attorney fees, despite the underlying contract providing that "the prevailing party in arbitration 'shall be entitled' to reasonable attorney's fees." Agnew, 33 Wn. App. at 284. This court determined that the arbitrator's decision was in error because "[t]he question of whether or not attorney's fees should be awarded to the prevailing party was not an issue submitted to the tribunal for arbitration . . . having already been decided by the parties by agreement, it was not arbitrable." Agnew, 33 Wn. App. at 288.

Similarly here, the arbitrator was following the parties' guidance that discovery should be substantially limited when denying discovery into Newell's complete medical records.[10] The arbitrator's decision did not create a fundamentally unfair hearing.

D.

Swedish next argues that the arbitrator improperly allowed Newell to disclose that he was going to call a damages expert witness and rely on that witness's written report so late in discovery that Swedish was unable to properly respond. Swedish argues that while 10 days before the arbitration hearing Newell explained that his damages expert would not be testifying, three days before the hearing that response changed. Thereafter, Swedish requested that the arbitrator prevent Newell from presenting expert testimony at the hearing. The arbitrator denied that request because

_____

[10] See also Bunch v. King County Dep't. of Youth Servs., 155 Wn.2d 165, 180, 116 P.2d 381 (2005) ("The plaintiff, once having proved discrimination [under the WLAD], is only required to offer proof of actual anguish or emotional distress in order to have those damages included in recoverable costs.").

-13-

"Newell has complied with his discovery obligations . . . [and] the aggressive and accelerated arbitration calendar[11] on which Swedish insisted warrants some leniency as to the timing of disclosures."

This decision was not in error. Swedish was aware since the beginning of this dispute that Newell intended to retain a damages expert and that damages would be a significant issue at the arbitration hearing. In Newell's demand for arbitration, Newell asked for monetary, punitive, and liquidated damages. Then in Newell's supplemental response to interrogatories a month later, Newell informed Swedish of the precise damages he was claiming and that while he had not yet "retained an expert witness in this matter, [he] reserves the right to retain a damages expert." Both of these informed Swedish that damages were going to be an issue at arbitration and that Newell was considering hiring a damages expert.

Further, Swedish only asked the arbitrator to prevent Newell from relying on his expert. Swedish did not request a continuance to obtain its own expert witness, designate a rebuttal witness, or otherwise object to the arbitrator's decision. Resp't Br. at 45; see AAA Rule 36 ("Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object."); Kempf, 87 Wn. App. at 393 (the appellant "argues that the court properly vacated the arbitration award because the arbitrators refused to hear certain evidence, [and] refused cross-examination . . . [but he] did not object to any of the conduct he now complains of."). This indicates that Swedish's real desire was to

---

[11] Newell filed his demand for arbitration on June 15, 2017. The arbitration hearing occurred less than two months later, from July 31 to August 2, 2017.

-14-

improperly prevent Newell from utilizing a damages expert and not actually to obtain its own expert witness.

E.

Swedish next argues that the arbitrator's rulings demonstrate prejudice and support vacation of the award under RCW 7.04A.230(1)(b)(i).

RCW 7.04A.230(1)(b)(i) provides that the court shall vacate an award if there was "[e]vident partiality by an arbitrator." As this court recently explained, however, RCW 7.04A.230(1) is intended to remedy actual or apparent conflicts of interest that existed before the arbitration that should have been, but were not disclosed. Jensen v. Misner, 1 Wn. App. 2d 835, 846, 407 P.3d 1183 (2017). As we explained,

> Chapter 7.04A RCW does not define "evident partiality," but provides clear guidance regarding arbitrator disclosures. In Washington, an arbitrator has a limited obligation to disclose. RCW 7.04A.120(1) directs arbitrators to disclose
>
> any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:
>
> (a) A financial or personal interest in the outcome of the arbitration proceeding; and;
>
> (b) An existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, witnesses, or the other arbitrators.
>
> RCW 7.04A. 120(5) provides that "[a]n arbitrator appointed as a neutral who does not disclose a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party is presumed to act with *evident partiality* under RCW 7.04A.230(1)(b)."

Jensen, 1 Wn. App.2d at 845. The Jensen court rejected the appellant's partiality argument concluding, among other things, that the appellant failed to (1) "establish a violation of statutory disclosure requirements"; (2) allege the arbitrator had "an interest

-15-

in the outcome of the arbitration proceeding or a known, existing, an substantial relationship with a party"; or (3) "show prejudice from nondisclosure." Jensen, 1 Wn. App. 2d at 846-48.

Jensen is consistent with other decisions of this court interpreting RCW 7.04A.230(1)(b) as grounds for vacatur based on the arbitrator's disclosure of, or failure to disclose, conflicts of interest. For example, in S & S Const., Inc. v. ADC Properties LLC, 151 Wn. App. 247, 258, 211 P.3d 415, 421 (2009), Division Two explained that

> Established case law holds that under [RCW 7.04A.230(1)(b)], an arbitrator has a general duty to disclose a circumstance or relationship that bears on the question of impartiality where that relationship or circumstance creates a reasonable inference of the presence of bias or the absence of impartiality. When such an inference exists, the complaining party must show the existence of prejudice from the nondisclosure.

(Citing Hanson v. Shim, 87 Wn. App. 538, 943 P.2d 322 (1997)). Division Two went on to hold that "[a] party challenging the impartiality of an arbitrator . . . cannot wait to see whether the award is favorable to him before raising a challenge that he was aware of . before the award was made." S & S Const., 151 Wn. App. at 257.

Swedish does not base its partially challenge on a preexisting conflict of interest between the arbitrator and Newell, as required under RCW 7.04A.230(1)(b). Here, the arbitrator provided a disclosure, which included her prior dealing with both parties. Swedish did not object or allege impartiality prior to issuance of the arbitration award. In other words, Swedish "wait[ed] to see whether the award [was] favorable to [it] before raising the challenge" of alleged evident partiality. S & S Const., 151 Wn. App. at 257. Swedish's challenge under RCW 7.40A.230(1)(b) necessarily fails.

V.

Swedish argues finally that the arbitrator exceeded her power by assessing a fee multiplier on Newell's attorney fees. The arbitrator concluded that "Newell's request for a multiplier of 1.75 is justified under the applicable case law. The contingent fee as well as the high quality of legal representation justify the multiplier." Swedish asserts that this violated the law because in Washington fee multipliers are exceedingly rare and only available for unusually good or exceptional legal work and not where the lawyers are being paid on only a partially contingent basis.

This issue is not properly before us on appeal. Under RAP 2.5(a), we may refuse to review any claim of error which was not raised before the trial court. Exceptions to the rule are narrow and include (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right. Swedish does not argue that any of the narrow exceptions apply.

Swedish made a tactical choice below: it chose to rely on the merits of its case against the primary award and not raise specific issues with the supplemental award of attorney fees. Such a tactical choice neither presents the sort of concern over the parties' rights that would afford it a second bite at the apple nor indicates that the argument presented here is sufficiently related to those raised below. We decline to consider Swedish's unpreserved argument for the first time on appeal.

VI.

Newell requests his fees on appeal. The WLAD provides that "[a]ny person . . . injured by an act in violation of this chapter shall have a civil action in a court . . . to recover the actual damages sustained by the person . . . together with the cost of suit

-17-

including reasonable attorneys' fees." RCW 49.60.030(2). Accordingly, upon compliance with RAP 18.1 we award Newell his reasonable attorney fees on appeal.

We affirm.

_____  
Mann, A.C.J

WE CONCUR:

_____  

_____  
Andrus, J.